# ECKINGTON AND SOLDIERS' HOME RAILWAY CO. v. McDEVITT.

### ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 9.  Argued January 21, 1903 ; resubmitted March 9, 1903.—Decided November 16, 1903.

Plaintiff (below) contracted with defendant street railway company to convey to it a right of way through her land and to pay five hundred dollars in five years, it to construct extension over such right of way and operate same, running cars at certain designated hours.  The right of way was conveyed, the note given, the extension constructed and operated for several years, after which the railroad company ceased and refused to run its cars at the times designated, whereupon, her note being then overdue and unpaid, plaintiff demanded the removal of the tracks which was done. In an action to recover damages for breach of contract the trial court instructed the jury that the measure of damages was the excess, if any, in the market value of the land at the time the defendant entirely ceased to run its cars upon that part of the line which extended to and through the plaintiff's land with the cars running in accordance with the terms of the contract of the parties in evidence, and the expectation of their continuing so to run in the future, over the market value of the said land at the same time without any cars running on said part of said line and without any expectation that they would ever run thereon.

*Held*, That the instruction was not sufficiently guarded and was erroneous. That what might have been made by selling the land at a value enhanced by the operation of the extension in perpetuity was too dependent on uncertain contingencies to justify peremptorily instructing the jury that such anticipated gains were probable and contemplated consequences of the breach.

THIS was an action brought in the Supreme Court of the District of Columbia, August 8, 1894, to recover damages for alleged breach of contract.   Plaintiff on April 4, 1889, being the owner of a tract of land in the District of Columbia, containing about twenty-two acres, (with her husband, since deceased,) entered into an agreement with the Eckington and Soldiers' Home Railway Company, which recited: "Whereas the said parties of the first part, being desirous of securing an extension of the Eckington and Soldiers' Home Railway from the corner of Third and T streets northeast extended, to the east line of Lincoln avenue in the District of Columbia, through and along

the following streets, to wit: West on T street to Second street
east extended, thence north on the line of said Second street
extended to V street extended east in a right line, and thence
west on the line of said V street so extended to the east line of
Lincoln avenue; and whereas, the said party of the second part
has agreed to extend said railway to said Lincoln avenue by
the route aforesaid, upon certain conditions hereinafter men-
tioned;" therefore the McDevitts agreed in consideration of
the premises "and of the covenants hereafter mentioned, to be
kept and performed" by the railway company, to sell, grant
and convey to it, its successors and assigns, "a right of way,
sixty feet in width, for the use of the said party of the second
part, its successors and assigns forever, through and along the
following land belonging to the said Florence McDevitt," de-
scribed as "beginning at the southeast corner of the lands of
said Florence McDevitt, adjoining the property of George
Truesdell known as Eckington, and in the line of Second street
east extended northwardly in a right line, and extending thence
with uniform width thirty feet on each side of the center of said
Second street extended, to a line fifteen feet south of the north
line of said V street extended, and thence westerly with the
same width on each side of the center of said V street extended,
to the east line of Lincoln avenue;" also to pay to the railway
company five hundred dollars five years from the date of the
agreement, with interest, to be evidenced by a promissory note.
But that the grant was subject to certain "conditions" to wit,
that work on the extension should be commenced on or before
May 1, 1889, and completed on or before October 1, 1889; that
the grades should be as described; that the material removed
in grading should be delivered on the lands of the McDevitts
as directed by them; that the excavation should not exceed
twenty feet in width at bottom and sixty feet at top; and that
"after said extension is completed and opened for traffic, a car
shall be run thereon to Lincoln avenue at least once in thirty
minutes between 7.30 A. M. and 6 P. M. and at least once a hour
to 9 P. M., and one car at 11 P. M."

The extension was completed in the manner and within the time prescribed and opened to traffic, and the five hundred dollar note was given. On December 27, 1889, a deed was executed and delivered to the company by Mr. and Mrs. McDevitt, in form an indenture, but signed and sealed by the McDevitts alone. This conveyed the right of way to the company, "its successors and assigns forever," with covenants of warranty and further assurance, and it also recited a covenant on the company's part that the cars should be run as described in the contract.

The extension was operated from 1889 to May or June, 1893, when the night cars were taken off. Thereupon, and on June 26, 1893, Mrs. McDevitt filed her bill for specific performance, to which the company set up in its answer, among other things, that the extension had always been a source of great loss, especially in operating at night, and that "the present management of the road, having been advised that their right to operate said extension over the line of proposed streets without authority from Congress was very doubtful, deemed it wise to suspend such operation until the question could be definitely settled."

July 9, 1894, the bill was dismissed but "without prejudice to the right of complainant to resort to such remedy at law as she may be advised." About that time and prior to July 25, 1894, the railway company ceased to operate the extension altogether, and it was testified that the attorney of the company, on its behalf, "refused to do anything in the way of carrying out the contract." On the last named day Mrs. McDevitt notified the company, in writing, to forthwith remove its tracks from the premises, and that she should bring an action for breach of contract. The tracks were accordingly removed. In the meantime the five hundred dollar note had matured and was not paid.

The evidence tended to show that Mrs. McDevitt had caused a map of a proposed subdivision of the land to be made, but that this had not been recorded, and that nothing had been

done in the way of preparing the tract for subdivision and sale by grading; that no streets had been opened through it except as effected by the action of the railway company; that the excavations for the railway tracks were what would be Second and V streets, to which extent plaintiff would be relieved from grading. Evidence was introduced of sales by Mrs. McDevitt of four parcels of the land prior to the removal of the tracks, and tending to show the value of the land with and without the railroad in operation through it. Also that the business de-pression of 1893 caused declines in value and rendered real estate in the vicinity of this property unsalable until after 1894.

Among other instructions the court gave the following:

"The jury are instructed that the measure of damages in this case is the excess (if the jury find from the evidence that there was such excess) in the market value of the land at the time that the defendant ceased entirely to run its cars upon that part of its line which extended to and through the plaintiff's land, with the cars running in accordance with the terms of the contract of the parties in evidence, and the expectation of their continuing to so run in the future, over the market value of the same land at the same time without any cars running on said part of said line and without any expectation that they would ever run thereon."

To the giving of which defendant objected and duly preserved an exception.

The jury found a verdict in favor of plaintiff for $15,000, and motions in arrest and for new trial having been made and overruled, judgment was entered thereon, which was affirmed by the Court of Appeals of the District, 18 App. D. C. 497, and this writ of error thereupon sued out.

The railway company was a corporation created by an act of Congress approved June 19, 1888, 25 Stat. 190, c. 419, "with authority to construct and lay down a single or double-track railway, with the necessary switches, turnouts, and other mechanical devices and sewer connections necessary to operate the same by horse, cable or electric power, in the District of

Columbia through and along the following avenues, streets and highways," (describing them,) and also a branch as described. The railway was to be laid in the center of the avenues and streets as near as might be, and in the event of a change of grade of any of the streets, avenues or roads occupied it was made the duty of the company, at its own expense, to change its railroad so as to conform to such new grade. The company was to run cars as often as the public convenience might require, in accordance with a time table or schedule which was to be approved by the Commissioners of the District; and was to construct such ticket offices, passenger rooms, etc., at such points on its line as the Commissioners might approve. The government and direction of the affairs of the company were vested in a board of nine directors, who were to choose officers as designated. Congress reserved the right to alter, amend or repeal the act at any time.

By an act approved April 30, 1890, 26 Stat. 77, c. 172, amending the charter, the company was authorized to extend its tracks through and along certain streets named, which provided "and also beginning at the present terminus of its Cemetery Branch on the east side of Lincoln avenue, and thence northerly along Lincoln avenue to a point opposite the entrance to Glenwood Cemetery."

By an act approved July 5, 1892, 27 Stat. 65, c. 143, the charter was further amended by authorizing the extension of tracks, and providing "that the tracks of said company on Lincoln avenue shall be taken up within thirty days from the passage of this act, and the roadway shall be restored to public uses in such manner as the Commissioners of the District of Columbia shall direct."

*Mr. Walter L. McDermott* and *Mr. John Ridout* for plaintiff in error:

"Damages recoverable on a breach of contract are measured by the actual loss sustained, provided such loss is what would

naturally result as the ordinary consequence of the breach or as a consequence which may, under the circumstances, be presumed to have been in the contemplation of both parties as the probable result of a breach." *Hadley* v. *Baxendale,* 9 Exch. 341, and *Horne* v. *Midland Ry. Co.,* L. R. 8 C. P. 131; same cases also in 5 Eng. Ruling Cas. 502; 6 id. 617; *Howard* v. *Stillwell & Bierce Co.,* 139 U. S. 199, 207; *Gurley* v. *McLennan,* 28 Wash, Law Rep. 830; *M. K. & T. Ry.* v. *Scott,* 15 Kansas, 370; *Harvey* v. *Conn. R. R. Co.,* 124 Massachusetts, 421; *Ward* v. *Central R. R. Co.,* 47 N. Y. 29; *Ward's, etc., Co.* v. *Elkins,* 34 Michigan, 439; *Mather* v. *American Express Co.,* 138 Massachusetts, 55. There was no actual loss sustained by the defendant in error; she still owns the property. *W. U. Tel. Co.* v. *Hall,* 124 U. S. 444; *Hetzel* v. *R. R. Co.,* 6 Mackey, 1. Speculative profits cannot be considered in awarding damages. *Rockford &c. Ry.* v. *Beckemeier,* 72 Illinois, 267; *Roberts* v. *N. Y. Elevated R. R. Co.,* 128 N. Y. 499. The effect of the business depression should have been considered in regard to the abandonment of the road. *Masterton* v. *Mayor,* 7 Hill, 61. It was error to admit the testimony respecting the prices of other and similar property to that in question for the purpose of proving its value. *East Pa. R. R. Co.* v. *Hiester,* 40 Pa. St. 53; *P. & N. Y. R. R. Co.* v. *Bunnell,* 81 Pa. St. 414; *Pa. S. V. R. R. Co.* v. *Ziemer,* 124 Pa. St. 560; *Montclair R. R. Co.* v. *Benson,* 36 N. J. L. 557; *C. P. R. R. Co.* v. *Pearson,* 35 California, 247, 262; *Selma R. & D. R. R. Co.* v. *Keith,* 53 Georgia, 178; *In re Thompson,* 127 N. Y. 463. The agreement and the record in the equity suit should not have been admitted in evidence. The president of a railroad company has no authority to bind the company by any agreement except in the ordinary discharge of the company's business. *Titus* v. *Cairo R. R.,* 37 N. J. L. 98; *Templin* v. *Chicago Ry.,* 73 Iowa, 548. The reëntry made by the defendant in error was an election and excluded her from a claim for damages. *Bradley* v. *Brigham,* 144 Massachusetts, 141; *Thomas* v. *Walt,* 104 Michigan, 201.

*Mr. A. S. Worthington, Mr. John C. Heald* and *Mr. Charles L. Frailey* for defendant in error.

The instruction as to the measure of damages was correct. *Hadley* v. *Baxendale* and *Horne* v. *Midland Ry. Co., Hertzel* v. *B. & O. R. R. Co., Howard* v. *Stillwell & Bierce Mfg. Co. Benjamin* v. *Hilliard,* 23 How. 149, 167; *Primrose* v. *West. Un. Tel. Co.,* 154 U. S. 1, distinguished as not applicable in this case; but for rule see 2 Sedgwick, sec. 615; *Kidd* v. *McCormick,* 83 N. Y. 391, 397. When a railroad company has contracted with a landowner, in consideration of his allowing the company to construct its line through his land, to build and maintain a station on or near his property and has failed to carry out its contract, the measure of damages in an action on the contract is the difference between the value of the plaintiff's land with the station and without it. *Mobile &c. R. Co.* v. *Gilmer,* 85 Alabama, 422, 436; *Louisville &c. R. Co.* v. *Sumner,* 106 Indiana, 55, 61; *Houston &c. R. Co.* v. *Molloy,* 64 Texas, 607, 613; *Wilson* v. *Northampton &c. R. Co.,* L. R. 9 Ch. Ap. 279–285. So, when ornamental or fruit-bearing trees or trees used as a shade for cattle are destroyed, the measure of damages is not the value of the trees, but the difference between the value of the premises with and without the trees. 3 Sedgwick, § 933; *Chipman* v. *Hibberd,* 6 California, 162; *Wallace* v. *Goodall,* 18 N. H. 439; *Argotsinger* v. *Vines,* 82 N. Y. 308; *Van Deusen* v. *Young,* 29 Barb. 9, and see cases cited in 6 English Ruling Cases, 617, note on *Hadley* v. *Baxendale; Cadle* v. *Muscatine &c. R. R. Co.,* 44 Iowa, 11; *U. S. Tel. Co.* v. *Gildersleeve,* 29 Maryland, 154 U. S. 31. Although the actual damage sustained is to some extent uncertain and cannot be calculated mathematically to a cent or a dollar it does not follow that offending party cannot be called to account at all. Where it is uncertain whether any damages would result from a breach of contract the plaintiff gets only nominal damages; but where the damage is clear and the amount of it only uncertain, the rule invoked does not apply. *Simpson* v. *L. & N. W. R. Co.,* L. R. 1 Q. B. D. 274; *Wakeman* v. *Wheeler and Wilson*

*Manufacturing Co*, 101 N. Y. 205; *Lanahan* v. *Heaver*, 79 Maryland, 413; *Blagen* v. *Thompson*, 23 Oregon, 239, 254; 18 L. R. A. 315. The evidence as to value and effect of a railway thereon was properly admitted; witness was competent. *Montana Ry. Co.* v. *Warren*, 137 U. S. 348, 353; *Hunter* v. *Burlington R. Co.*, 84 Iowa, 605; *Diedrich* v. *Northwestern R. R. Co.*, 47 Wisconsin, 622, 667; *Curtin* v. *R. R. Co.*, 135 Pa. St. 20; effect of change of grade on value. *Dawson* v. *Pittsburgh*, 159 Pa. St. 317 ; of putting pipe line across. *Mewes* v. *Crescent Pipe Line*, 170 Pa. St. 364; depreciation by water taking. *Lee* v. *Springfield Water Co.*, 176 Pa. St. 223; laying out of highway and street opening. *Dwight* v. *County Commissioners*, 11 Cush. 201; *Shaw* v. *Charlestown*, 2 Gray, 107; evidence. competent as to effect of structure to be put on part taken on the value of part not taken; *Tucker* v. *Mass. Cen. R. R. Co.*, 118 Massachusetts, 546; *Chandler* v. *Jamaica Pond Aqueduct*, 125 Massachusetts, 544; *Baltimore* v. *Brick Co.*, 80 Maryland, 458, 472 ; *Ferguson* v. *Stafford*, 33 Indiana, 162; *Frankford R. R. Co.* v. *Windsor*, 51 Indiana, 238; *Ohio Valley R. Co.* v. *Kersh*, 130 Indiana, 314; evidence as to difference of value before and after railroad or improvement built held admissible. *Everhart* v. *R. R. Co.*, 70 Illinois, 347; *R. R. Co.* v. *Henry*, 79 Illinois, 294; *R. R. Co.* v. *Mix*, 137 Illinois, 141; *Hayes* v. *R. R. Co.*, 54 Illinois, 373; and parties acquainted with property may give opinions. *R. R. Co.* v. *Stock Yards*, 120 Missouri, 541; *Smalley* v. *Iowa R. R. Co.*, 36 Iowa, 574; and the plaintiff is not confined to mere expert testimony. *Pingery* v. *R. R. Co.*, 78 Iowa, 438; *Blair* v. *Charleston*, 43 W. Va. 73; *R. R. Co.* v. *Knapp*, 51 Texas, 592, 600; *R. R. Co.* v. *Woods*, 31 S. W. Rep. 237; *Topeka* v. *Martineau*, 42 Kansas, 388.

The testimony of witnesses as to value of other land in neighborhood was competent. Cases on brief of plaintiff in error distinguished,—inapplicable in this case. *In re Thompson*, 127 N. Y. 463, overruled in *Langdon* v. *Mayor*, 133 N. Y. 628; and see *Israel* v. *Manhattan R. R. Co.*, 158 N. Y. 624; *Roberts* v. *N. Y. El. R. R. Co.*, 128 N. Y. 455, 473; *Doyle* v. *Manhattan*.

*R. R. Co.*, 128 N. Y. 488.   In District of Columbia courts have recognized custom of giving such evidence as to value of neighboring parcels.   *Shoemaker* v. *United States*, 147 U. S. 282; *Kerr* v. *South Park Commissioners*, 117 U. S. 379, 386.   And see also *Patterson* v. *Boom Co.*, 3 Dillon, 465; *Boom Co.* v. *Patterson*, 98 U. S. 403; 10 Eng. & Am. Ency. 2d ed. 1155; Pierce on Railroads, 224; Lewis on Eminent Domain, § 443; Randolph on Eminent Domain, § 236; 1 Greenleaf on Evidence, § 14, note 43, p. 91, 16th ed.   Evidence as to mere offers for neighboring lands held inadmissible, but admitted as to sales actually made.   *Davis* v. *Charles River R. R. Co.*, 11 Cush. 509; *Paine* v. *Boston*, 4 Allen, 168; *Sawyer* v. *Boston*, 144 Massachusetts, 470; *Roberts* v. *Boston*, 149 Massachusetts, 354; *Seattle R. R. Co.* v. *Gilchrist*, 4 Washington, 509; *Mayor* v. *Brick Co.*, 80 Maryland, 458, 472; *Laflin* v. *Chicago &c. R. R. Co.*, 33 Fed. Rep. 415, 423; *Concord &c. R. R. Co.* v. *Greely*, 23 N. H. 242; *Washburn* v. *Milwaukee &c. R. R. Co.*, 59 Wisconsin, 364, 377; *Culbertson &c. Packing Co.* v. *Chicago*, 111 Illinois, 651; *Town of Cherokee* v. *Land Co.*, 52 Iowa, 279; *Wyman's Case*, 13 Metc. (Mass.) 316, 326; *Gardner* v. *Brookline*, 127 Massachusetts, 52; *St. L. &c. R. Co.* v. *Clark*, 121 Missouri, 169.

Mr. Chief Justice Fuller, after making the foregoing statement, delivered the opinion of the court.

Assuming that the railway company might have lawfully bound itself to construct and operate this piece of road, the question is presented to what compensation in damages plaintiff below would be entitled if the company found that the traffic did not justify its further maintenance and ceased to run its cars, or if the public interests required such changes of the lines of the road as rendered the abandonment necessary.

Plaintiff had been reinstated in the possession of her land, freed from the encumbrance of the right of way, and had been discharged from the liability to pay the five hundred dollars. And as the record stands, it is doubtful if any direct specific

damage can properly be held to have been made out. At all events, and conceding that she was entitled to substantial damages for any injurious change of condition, any liability incurred, and any gains prevented, to secure which action had been taken, in reliance on the contract, the instruction as to the measure of damages embraced none of these matters, and was confined to profits only.

The transaction was not a sale of the land where the difference between the price agreed and the market value would represent the measure of loss or gain. Restitution having been made of what plaintiff had parted with, how far could she demand to be compensated for prevented gains or anticipated profits?

The contract did not purport to bind the company to operate its cars over the extension for any designated period, but, considering its terms in relation to the right of way, the trial court held that it was bound in perpetuity, and thereupon that if it ceased to do this in whole or in part at any time, she could order the tracks off her premises, and recover the difference between the value of her land with the cars running and with the expectation that they would continue always to run, and the value without the operation of the cars and with no expectation that they would run in the future.

The instruction was addressed to differences in market value as affected by the running of the cars, with the element added of expectation of continuance or cessation for all time. As thus put the supposed difference in market values amounted to anticipated profits, and these were not recoverable if dependent on uncertain and changing contingencies and not in contemplation of both parties as a probable consequence of breach. *Howard* v. *Stillwell and Bierce Manufacturing Co.*, 139 U. S. 199; *Globe Refining Co.* v. *Landa Cotton Co.*, 190 U. S. 540. Whether prevented gains or prospective profits are or are not too uncertain and contingent to be regarded as probable and contemplated consequences is always a question of difficulty, and as in such cases juries are permitted to exercise a wide

discretion in the allowance of damages, great care is required in advising them as to the elements proper to be considered in making up their verdicts.

In a case like this, gain prevented is a more accurate term than loss of profits. And it is said in Sedgwick on Damages (8th ed.), vol. 1, p. 250, § 173: "Where an injured party claims compensation for gain prevented, the amount of loss is always to some extent conjectural; for there is no way of proving that what might have been, would have been. Thus, when the claim is made for compensation for a deprivation of property, it may be that if the property had remained in the owner's control it would have brought no gain."

Here the evidence tended to show that a financial depression prevailed at the time of the breach, and that all real estate in the particular locality was unsalable. Gains, then, were practically impossible, while on the other hand there was evidence that some years after the breach the depression passed away and real estate rose in value.

The books contain many illustrations of the uncertainties which will or may defeat recovery of anticipated profits.

In *Rockford, R. I. &c. R. R. Co.* v. *Beckemeier,* 72 Illinois, 267, it was held, in a suit against a railroad company for the failure to erect a depot building upon plaintiff's farm, as agreed, that any supposed damage to the farm on that account, growing out of anticipated increased value, was too remote.

In *Evans* v. *Cincinnati, S. & M. R. R. Co.,* 78 Alabama, 341, a railroad company agreed to locate houses for its hands near plaintiff's land, and it was held that possible loss of profits at his store and mill was too speculative.

So in *Missouri, Kansas & Texas Railway Co.* v. *Fort Scott,* 15 Kansas, 435, where a railroad company failed to perform its agreement to make the city of Fort Scott the terminus of one division of its line and erect machine shops there, it was held that an inquiry into the value of real estate and amount of business, in order to show what profits would have been

made, was improper; but the city might recover for the value of the buildings to it as taxable property.

*Scholten* v. *St. Louis & S. F. R. R. Co.*, 73 S. W. Rep. 915, is so far in point that it may well be cited, though not decided by a court of last resort. There the St. Louis Court of Appeals held that where a railroad's agreement to build and maintain a switch for a private property owner did not affect the performance of the railroad's duties to the public, the railroad was not entitled to allege in an action for illegally destroying the switch, that the contract was void as against public policy; and that as the plaintiff had graded the right of way and furnished the ties, and the agreement did not specify any length of time for the maintenance of the switch, plaintiff was entitled on the destruction of the switch to recover the value of the ties and the cost of grading.

Treating the contract as a simple contract, and the refusal to run the cars as a breach which Mrs. McDevitt could accept as finally determining it, we think she could not recover for deprivation of the speculative gains of a remote future. What might have been made by selling the land at a value enhanced by the operation of the tracks in perpetuity was purely problematical and not naturally in contemplation. And the more so in view of the fact that railroad companies, while private corporations, are *quasi* public agencies engaged in the performance of public duties, and that contracts which prevent them from the discharge of those duties cannot be sustained. It did not follow that the company, because it possessed the power to construct and operate this extension, could contract to operate it forever in so absolute a sense that damages could be awarded for the breach of such a contract predicated on the expectation of its perpetual operation. *Texas & Pacific Railway Co.* v. *Marshall*, 136 U. S. 393. Again, in this aspect, the instruction treated the agreement as equivalent to a covenant running with the land, and we are inclined to think that the bearing Mrs. McDevitt's demand that the tracks be removed, and the accepted and complete surrender of the right of way

by their removal accordingly, might have had, under all the circumstances, on the question of prospective damages should not have been excluded from the jury.

We are of opinion that the instruction as given was erroneous, and as it was definite and peremptory in its terms, and as it cannot be said that the jury were not influenced, and perhaps controlled, by it, we hold the error fatal to the judgment. As there must be a new trial we refrain from discussing the suggestions in respect of the acceptance of the deed by the company, a subject much considered in *Willard* v. *Wood,* 135 U. S. 309; *S. C.,* 164 U. S. 502, and the discharge of the alleged covenant, made below, but not pressed in argument here.

*Reversed and remanded with directions to reverse the judgment of the Supreme Court of the District and order a new trial.*

Mr. Justice White and Mr. Justice McKenna dissented.