## SHELLEY v. ECCLES et al.

(Circuit Court of Appeals, Eighth Circuit. September 29, 1922.)

No. 5645.

**Damages ⬤⟹40(2)—Owner of lands, who made contract for construction of factory to increase value of lands, entitled to recover for loss of profits for breach of contract.**

Where owner of lands adapted to the successful growing of sugar beets entered into a contract requiring the other party thereto to organize a corporation for the purpose of constructing and operating a sugar beet factory near such lands, and informed other party during the negotiations that his lands were adapted to beet growing, and that he was promoting the factory for the purpose of increasing the value of his lands, and where other lands of such owner increased in value by the construction and operation of beet sugar factories in the vicinity thereof, the failure of such other party to the contract to comply therewith, by the organization of such a corporation and the construction of a factory, *held* to entitle the owner to recover the anticipated profits in the amount to which the land would have increased in value, since such damages were presumably contemplated by the parties, and the amount thereof can be ascertained with reasonable certainty.

In Error to the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Action by John F. Shelley against Joseph M. Eccles and others. Judgment for defendants, and plaintiff brings error. Reversed.

This action was brought by the plaintiff in error to recover damages for a breach of a contract which he alleges was entered into by him through his agent, T. W. Shelley, and by the defendant in error L. R. Eccles. The District Court sustained demurrers to the original and amended complaints, and finally rendered judgment upon demurrer to the fourth amended complaint. The question presented on this writ of error is whether that complaint sets out a cause of action. The essential averments are as follows:

The plaintiff owns 2,400 acres of land (as described) adapted to the successful growing of sugar beets near Shelley, Idaho, and on the market for sale as farming land, and 200 acres additional in and adjoining Shelley; the portion thereof in the town being platted into lots, blocks and tracts and on the market for sale as residence property. In order to create a demand for all of said property, the plaintiff contracted, in person and through his agent, T. W. Shelley, with farmers, for the growing of sugar beets during three years upon about 5,000 acres near Shelley, and in connection with a sugar factory would have caused a bridge to be constructed across Snake river to lessen the distance between the lands west of the river and the factory, and thus further increase their value. It was understood between the plaintiff, through his said agent, and defendant Joseph M. Eccles, at the date of their contract for the construction of a sugar factory, that it would be operated in conformity with the beet-growing contracts, and that the profit plaintiff was to make was the value the factory would add to his lands, and for that purpose the plaintiff, through said agent, and the defendant entered into a written contract.

This contract, made nominally between T. W. Shelley, as seller, and Joseph M. Eccles as purchaser, recited that, whereas, the seller has procured about 225 agreements from various persons near Shelley obligating them to raise and deliver for three years about 5,000 acres of sugar beets, and the seller desired to sell and the purchaser to buy those agreements, it was agreed the seller would assign them to the purchaser, who was to pay the expense of obtaining them. The purchaser agreed to form a corporation under the laws of Utah, with a capital stock sufficient to erect a sugar factory at or near Shelley, on

a site to be mutually agreed upon, ready to manufacture beet sugar from beets grown in 1917, according to the contracts with growers. The construction of the factory was to begin in 1916. The purchaser was to provide beet dumps at certain railroad stations named. He reserved the privilege of inspecting the lands, and if a certain minimum was reached the construction of the factory was optional with him.

Prior to the contract, plaintiff's agent informed the defendant that he was such agent in the negotiations for and the making of the contract, that the plaintiff owned the lands, that they were adapted to beet growing, that he was promoting the factory for the purposes aforesaid, and he informed the defendant generally of the purposes and ends the plaintiff intended to accomplish by the contract. In the negotiations and contract, the defendant acted for himself and his codefendant, L. R. Eccles. Additional beet growing contracts were obtained. The lands were inspected and accepted. Thereafter a factory site was mutually selected and agreed upon at a specified place on the east bank of Snake river, near Shelley and plaintiff's lands. The cost of obtaining the growers' contracts was paid as agreed, and they were assigned to the defendant Joseph M. Eccles. The corporation was formed. All of the terms and conditions of the contract were performed by the plaintiff.

The defendants have not constructed or operated the factory, or caused it to be done by a corporation, at said site, or as agreed. Sugar factories have been built and operated in Snake river valley, where plaintiff's lands are located, increasing the value of lands adapted to beet growing from $25 to $75 an acre. If the factory had been erected and operated as agreed, a demand would thereby have been created for plaintiff's lands, lots, and tracts, and he would have realized from them $516,500; whereas, without the factory they were not worth over $316,500. Wherefore, he was damaged to the extent of $200,000.

Mahlon E. Wilson, of Salt Lake City, Utah (W. H. Holden and E. M. Holden, both of Idaho Falls, Idaho, on the brief), for plaintiff in error.

J. H. De Vine, of Ogden, Utah (J. A. Howell, David L. Stine, R. C. Gwilliam, and J. D. Murphy, all of Ogden, Utah, on the brief), for defendants in error.

Before CARLAND and LEWIS, Circuit Judges, and COTTERAL, District Judge.

COTTERAL, District Judge (after stating the facts as above). The fundamental rules on the subject of damages resulting from a breach of contract are, of course, not in doubt, and do not call for repetition. As frequently occurs, a chief source of controversy lies in their application to a given case, and particularly where a recovery is sought for the loss of anticipated profits. That they may be recovered, although not by general rule, under due circumstances, is settled. 8 R. C. L. p. 501; 17 C. J. p. 785; 1 Sedgwick Damages, § 149; Sutherland, Damages, § 59; Blagen v. Thompson et al., 23 Or. 239, 31 Pac. 647, 18 L. R. A. 315.

Decisions have been cited where recovery of profits was sought, supposed to uphold the decree in this case, and among them Howard v. Stillwell & Bierce Mfg. Co., 139 U. S. 199, 11 Sup. Ct. 500, 35 L. Ed. 147; Stebbins v. Selig, 257 Fed. 230, 168 C. C. A. 314; Globe Refining Co. v. Landa Cotton Oil Co., 190 U. S. 540, 23 Sup. Ct. 754, 47 L. Ed. 1171; and Eckington & Soldiers' Home Ry. Co. v. McDevitt, 191 U. S. 103, 24 Sup. Ct. 36, 48 L. Ed. 112. We are persuaded that the dissimilar circumstances attending the contracts were such as to induce a

result different from that which is required in the present case. However, it is to be noted that principles were announced which have application in support of the complaint in this case.

In the Howard Case, a loss of profits in flour sales due to the noncompletion of a mill was denied. There were various citations, beginning with Hadley v. Baxendale, 7 Exch. 341. The general rule was declared, subject to exceptions, that loss of profits is not recoverable—in substance, because too uncertain, contingent, and remote, and there was no engagement to pay them, and they cannot be implied from the nature and terms of the contract. It was added:

"But it is equally well settled that the profits which would have been realized had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objection of uncertainty or of remoteness, or where from the express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably presumed that they were within the intent and mutual understanding of both parties at the time it was entered into."

In Stebbins v. Selig, 257 Fed. 230, 168 C. C. A. 314, decided by this court, the plaintiff claimed damages for the loss of a rice crop, as the result of a failure to provide a well and pump for irrigation purposes, but did not prevail. It was said in part:

"Thus arises the rule, above stated, that parties who break their contracts are to be held responsible for such consequences as may be reasonably supposed to be in the contemplation of the parties at the time of making the contract. * * * It has also been decided that mere notice to a seller of some interest or probable action of the buyer is not enough necessarily and as matter of law to charge the seller with special damage on that account."

A test given was whether the defendant would have agreed, if asked, to be liable, and the answer was in the negative.

The case of Globe Refining Co. v. Landa Cotton Oil Co., 190 U. S. 540, 23 Sup. Ct. 754, 47 L. Ed. 1171 was for breach of contract to sell and deliver oil. There were averments in respect of items as to agreement, understanding, and contemplation of breach, not contained in the written contract. Exceptions were sustained, which reduced them below the jurisdictional requirement, and the action was dismissed. We quote from the opinion as follows:

"If a contract is broken, the measure of damages generally is the same, whatever the cause of the breach. We have to consider, therefore, what the plaintiff would have been entitled to recover in that case, and that depends on what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made."

In Eckington & Soldiers' Home Ry. Co. v. McDevitt, 191 U. S. 103, 24 Sup. Ct. 36, 48 L. Ed. 112, the claim was for damages in not extending and operating a line of railway through plaintiff's land. An instruction was held to be erroneous. It was said in part:

"The instruction was addressed to differences in market value as affected by the running of the cars, with the element added of expectation of continuance or cessation for all time. As thus put, the supposed difference in market values amounted to anticipated profits, and these were not recoverable if dependent on uncertain and changing contingencies, and not in contemplation of both parties as a probable consequence of breach."

It will be unnecessary to discuss or distinguish the many cases and authorities cited and relied upon by counsel. Those we have noticed suffice to make plain the tests applicable where a loss of profits is claimed as damages. The determining inquiry is whether the damages may be regarded as reasonably certain, and may be reasonably supposed to have been within the contemplation of the contracting parties. The pleading here under consideration is not open to the objection found in the governing principles or their application in the decided cases. It alleges that a definite increase in the land values would have resulted from the factory, as in other instances, that this was plaintiff's object in promoting it, that the defendant was so informed in advance, and that it was understood at the time of contracting his profit would be due to the factory.

Mere notice of his object would have been alone insufficient, but it was competent to allege and rely upon the circumstances, aside from the literal terms of the contract, showing that the damages claimed were presumably contemplated by the parties, as a consequence of a breach of the contract. In our opinion, the fourth amended complaint alleges facts which were amply sufficient to withstand the demurrer.

For this reason, the ruling and the judgment upon it should be, and they are, reversed.