HIGGINS,' Justice.
 

 The Board of Trustees of Ruston Circuit, Methodist Episcopal Church, South, and S. D. Pearce, President of the Board, instituted a slander of title action against Mrs. Jessie Rudy and others, alleging that the Church was the owner and in possession of a certain lot of ground in the Town of Ruston, through acts of donation made to it by Robert E. Russ on August 28, 1885 and November 26, 1887; and that the defendants, heirs of the donor, were slandering the title of the Church “by claiming to own a reversionary interest therein and publicly proclaiming and contending that in the event said property is not used for religious' purposes, the same should revert to them by reason of the wording of the aforesaid donations, and have prevented petitioner from selling and disposing of said, property at a good price by reason of making the aforesaid contentions; and despite amicable demand, said defendants have failed and refused to either ratify the donation above referred to or to execute a quit claim to the said property * * * The petitioner prayed that the defendants be ordered to either disclaim title or to assert such rights as they might have, and that, in due course, there be judgment in its favor and against the defendants, de
 
 *203
 
 creeing the petitioner to be the full fee owner of the property, without any reversionary rights existing therein in favor of the defendants.
 

 The defendants filed exceptions' of no right or cause of action on the ground that this was an attempt to obtain a declaratory judgment. The exceptions were overruled and the defendants answered, reserving the benefit of their exceptions and reiterating them. They admitted plaintiff to be the owner of the lot in question but subject to the limitations of the donation deed of August 28, 1885; they admitted that they had refused to sign a quit claim deed, but denied that they were claiming title to the property at the time of the suit, because such a claim would be premature, as the property had not been sold by the plaintiff or ceased to be used by it for religious purposes.
 

 The trial judge held that the defendants had put their title or claim at issue and decreed the plaintiff to be the owner of the property free and clear of any claims, vested or reversionary, of the defendants. The defendants appealed.
 

 The record shows that on August 28, 1885, Robert E. Russ gave, granted and conveyed to the Methodist Episcopal Church at Ruston, La., the East half of Lot Two (2), Square 19, of the Town of Ruston, Lincoln Parish, La., according to the original plat of the town “for the use and benefit of the said Methodist Episcopal Church, to be used for religious purposes by said Church * * * and to be applied by said President to the object herein stated * * * and the said President to have and to hold the said property for the use and benefit aforesaid * * *
 

 On November 26, 1887, Robert E. Russ donated, bequeathed, transferred and delivered unto the Methodist Episcopal Church at Ruston the same property by authentic instrument, without any restrictions, but with this stipulation: “This is the lot on which the Methodist Church is now situated. I donated this lot to said church about three years ago, but have neglected to make this deed.”
 

 The Methodist Episcopal Church has been in possession of and has occupied the lot since the execution of these transfers and, last year, as owner of the property, the Church, in order to raise money to build a new edifice, advertised the property for sale and a prospective purchaser had the title examined but, fearing a lawsuit, he would not buy the property. The plaintiff’s representatives then tried to obtain a quit claim from the heirs of Robert E. Russ, but some of them refused to execute a quit claim deed and continued to publicly proclaim that the Church could not sell the property and that when the Church ceased to use the property for religious purposes, or sold it, the title to the property would revert to them. The defendants did not offer any evidence.
 

 The allegations of the plaintiff’s petition clearly showed that the defendants were slandering the plaintiff’s title and casting a cloud upon it by their actions in claiming a reversionary or real right in the property. This was a serious interference
 
 *205
 
 with the plaintiff’s alleged fee simple rights to sell the property, as appears from the fact that an interested purchaser refused to buy it for fear of a defective title or subsequent litigation. The plaintiff was, therefore, entitled to have the defendants either affirm or disclaim the alleged slander of its title. The fact that they conceded that the plaintiff had title to the property only so long as it used it for religious purposes and that such use had not ceased, does not make the question here presented premature, because the defendants had cast a cloud upon the plaintiff’s title at that time by claiming a reversionary interest in the land. In seeking to have this cloud removed, the plaintiff was not asking for a. declaratory judgment but was seeking a judicial determination of the validity of the defendants’ adverse claims, which were seriously affecting plaintiff’s title. The exceptions of no right or cause of action were properly overruled.
 

 In the district court and here, the plaintiff argued that, as the defendants denied slandering its title, they disclaimed any interest or right in the property and this entitled plaintiff to a judgment as praypd for, citing Wilson v. Pierson, 143 La. 287, 290, 78 So. 561.
 

 The trial judge ruled that, as the defendants claimed the plaintiff had a limited title, because of their alleged reversionary rights, they had the burden, as plaintiff, in a petitory action, to sustain the existence of that real right. This was a correct interpretation of the defendants’ answer, for it is clear that they asserted the right -to have the title reverted to them when the Church ceased to use the property for religious purposes. They, therefore, converted the slander of title or jactitation action into a petitory one. Segal v. Helis, La.App., 168 So. 364, 367; Frost-Johnson Lumber Co. v. Sailing’s Heirs, 150 La. 756—763, 91 So. 207; Miller v. Albert Hanson Lumber Co., 134 La. 225, 63 So. 883; McConnell v. Ory, 46 La.Ann. 564, 15 So. 424; Gay v. Ellis, 33 La.Ann. 249; Dalton v. Wickliffe, 35 La.Ann. 355 and 12 Tulane Law Rev. 256-257.
 

 It will be noted that the donor did not make a reservation that the title to the property was to revert to him or his heirs if it were not always used for the purpose for which it was donated.
 

 It has been held that where the donor does not place such a reservation in the act of donation, the donee is granted a complete title. Wilkie v. Walmsley, 173 La. 141, 136 So. 296 and Jaenke v. Taylor, 160 La. 109, 106 So. 711. Therefore, the title was completely vested in the Church by the first deed and the stipulation “ * * * to be used for religious purposes * * *” was merely indicative of the motive in making the donation. Hutchinson v. Tulane University, 171 La. 653, 654, 131 So. 838. If the donor intended to convey a restrictive title, he would have placed a clause in the act to the effect that, if the property were not used “for religious purposes,” it would be returned to him or his heirs. There being no such provision in the acts of donation here, the defendants’ claims to any real or reversionary interest or right in the property are without foundation.
 

 
 *207
 
 The case of Voinche v. Marksville, 124 La. 712, 50 So. 662, is not. apposite here, because the donor in that case expressly stipulated that the property was to revert to himself or his heirs when it ceased to be used for the purposes for which it was given. See Bush v. Bolton, 156 La. 491, 100 So. 692.
 

 For the reasons assigned, the judgment is affirmed at appellants’ costs.