## OGDEN et al. v. POLICE JURY OF CONCORDIA PARISH, LA., et al.
### No. 78.

District Court, W. D. Louisiana, Monroe Division.

July 31, 1939.

Gerard H. Brandon (of Brandon & Brandon), of Natchez, Miss., for plaintiffs.

Allan Sholars and George Gunby (of Sholars & Gunby), both of Monroe, La., for defendant Police Jury of Concordia Parish, La.

F. G. Hudson, Jr., and Geo. M. Snellings, Jr. (of Hudson, Potts, Bernstein & Snellings) both of Monroe, La., for defendants Board of Com'rs of Fifth Louisiana Levee Dist.

PORTERIE, District Judge.

. This suit is instituted by Mrs. Marion Davis Ogden and others, alleging . themselves to be the heirs of the late Don Jose Vidal, and, as such, entitled to recover

of and against The Police Jury of Concordia Parish and The Board of Commissioners of the Fifth Louisiana Levee District the principal sum of $14,040, as their alleged proportionate part of a contract between said Police Jury and Board of Levee Commissioners under the following circumstances:

By deed of November 18, 1809, the aforesaid Don Jose Vidal conveyed, bargained and sold to the magistracy of Concordia Parish, whose rights subsequently became vested in the Police Jury as the governing body thereof, certain real property as described in the complaint and otherwise identified in the pleadings in this cause, which property we will designate herein as the "old Court House Square."

This deed from Vidal contained the two clauses following, which present the vital issue in this litigation, to-wit:

(a) That the land was sold to the Parish "for the sole and only purpose of building and erecting thereon a Courthouse, jail and public offices and buildings for the use and benefit of said parish"; and

(b) "Provided moreover nevertheless that if at any time hereafter, the said parish or any other authority whatever shall remove or change from the above premises the Courthouse and other public buildings above recited to any other place or places, then and in that case the said Joseph Vidal, his heirs, executors, administrators or assigns shall by these presents have full power and authority to take possession of the same; he, the said Joseph Vidal, his heirs, executors, administrators, or assigns refunding and paying back for the use of said parish one thousand dollars (being the full sum which he, the said Joseph Vidal, hath received and paid for the same above mentioned house erected and built upon the premises aforesaid), and for all other buildings that shall be hereafter erected on the said premises hereby remised, he, the said Joseph Vidal, his heirs, executors and administrators shall well and truly pay, for the use of the parish aforesaid, such sum or sums therefor as shall be awarded and adjudged by two persons appointed by the parties therein in interest."

Following the conveyance from Vidal in 1809 the governing authority of the Parish of Concordia used the site thus acquired for the location thereon of the Parish Court House and other public buildings, all continuously for a period of one hundred and thirty years, or up until the early part of the year 1939. On January 18, 1939, the Police Jury of the Parish of Concordia, pursuant to special resolution of the Police Jury, conveyed to the Board of Commissioners of the Fifth Louisiana Levee District certain rights of easement, flowage rights and other real rights in and over the old Court House Square, and following upon such act of conveyance of January 18, 1939, the Police Jury razed and removed from the site the old public buildings and the Levee Board thereafter dredged and excavated the land in part and constructed thereon an emergency levee in part. These acts of the Levee Board were done in conjunction and cooperation with the United States Government authorities, represented and acting through the Corps of Army Engineers, as a part and portion of the project for flood control and levee construction in the alluvial valley of the Mississippi river, and particularly toward consummation of the Vidalia setback levee project, all designed to remove the peril of the Natchez Gorge and the flood dangers which it presented.

The conveyance herein mentioned from the Police Jury to the Board of Levee Commissioners was made for a recited consideration of $40,000, to be paid by the Levee Board to the Police Jury pursuant to an agreement of compromise adjustment by and between those two public bodies, as exemplified in Ordinance No. 171 of the Police Jury of the Parish of Concordia. That Ordinance recited and recites the agreement between the two bodies and declares especially that the conveyance is being made by the Police Jury for the reasons that the old Court House Square was and is no longer needed for public use, and, in fact, had become physically dangerous for use by the citizens of the Parish, due to imminent flood danger; and, further, specially declares that the amount of compensation agreed upon, to-wit: $40,000, represents an allocation of value of $1,000 for the real property, or old Court House Square, and $39,000 for the loss of the public buildings thereon.

These acts and transactions having occurred on March 31, 1939, the plaintiffs in this cause filed the present suit, alleging themselves to represent together 18/20ths of the outstanding interests of heirship under

Don Jose Vidal, and, as such, entitled to a recovery against the public bodies defendant of 19/20ths of the $40,000 compensation agreed upon between those two bodies, all under and by virtue of the restrictive and reversionary clauses in the original Vidal deed of 1809. Issue was thereafter joined in the suit through separate motions for summary judgment filed in behalf of the Police Jury of Concordia Parish and the Board of Commissioners of the Fifth Louisiana Levee District, pursuant to Rule No. 56 of the Federal Rules of Civil Procedure.

These motions for summary judgment present substantially identical defensive propositions, and those propositions are quoted verbatim from brief of movers:

One. "That subsequent to the transfer of 1809 from Vidal to the magistracy of Concordia Parish the said Vidal transferred all of his remaining right, title and interest in and to the old Court House Square to his son-in-law, Samuel Davis, and, furthermore, that subsequent thereto the said Samuel Davis by confirmatory deed and separate donation did transfer to the Police Jury of Concordia Parish all of the right, title and interest acquired or owned by him in the old Court House Square without reservation of any reversionary interest and in order forever to quiet and put at rest any possibility of dispute against the title of said Police Jury; by which said acts it is argued that there occurred a complete divestiture of any reversionary interest in the said Vidal or Davis, or the heirs of either of them.

"It may be noted that it is specially stipulated that the parties plaintiff are not only heirs of Jose Vidal but also are heirs in the direct descending line of his son-in-law, the said Samuel Davis, here mentioned."

Two. "The further proposition is advanced by defendants that the deed from Vidal to the Police Jury constituted no more than a contract between parties subject at all times to the overriding exercise of the inherent sovereign powers of the State of Louisiana, commonly denominated the police powers of the State."

Three. "That the State of Louisiana and its political subdivisions, the Boards of Levee Commissioners, are and at all times have been vested with inherent sovereign power in the matter of levees and flood control as exemplified in the historical levee servitude to which all lands adjacent to rivers in the State have at all times been subject."

Four. "Finally, defendants submit the proposition that the restrictive and reversionary clauses of the original Vidal deed cannot be construed otherwise than as a resolutory condition under the laws of the State of Louisiana, and that it is the established rule of Louisiana jurisprudence that parties may not avail themselves of such resolutory condition to defeat and set aside a grant subject thereto where it has become impossible to effect a restoration of the status quo."

All of the facts hereinabove recited are supported by documentary evidence and affidavits annexed to the original complaint and to the motions for summary judgment herein filed. There is in truth no controversy among the parties to this litigation as to the facts, which give rise to the suit, and the issues, by virtue of the motions for summary judgment herein filed, readily reduced themselves to questions of law.

In these motions for summary judgment the two defendants prove that on the 7th day of November, 1817, Joseph Vidal sold to Samuel Davis, his son-in-law and married to his sole child, the following: "all the right, title and interest, claim and demand of the said Jose Vidal, of, in and to three certain lots of ground, adjoining the aforesaid tract of land, fronting on the Mississippi River; being the same lots granted under the Spanish Government to Ramirez, purchased from Eliza Middleton by the said Jose Vidal by Bill of Sale, bearing date the Twentieth day of January, 1807, on part of which said lots the Court House and Jail of the parish aforesaid are situated."

Then the joint defendants show that on December 29, 1834, Samuel Davis in turn conveyed unto the parish of Concordia all that "he now has or may hereafter in any manner acquire of, in and to the said mentioned and described lot or parcel of land."

It is further shown that quite a long time afterwards, on March 24, 1841, a patent, mutually admitted as including the Parish Court House and Jail lots at issue herein, was granted by the United States to Samuel Davis, "for the lot or fractional Section Forty-nine in Township Seven of Range Ten East in the District of Lands subject to sale at Ouachita, Louisiana, containing One Hundred and One acres and fifty-eight-hundredths of an acre, according to the official plat of the survey of

said lands returned to the General Land Office by the Surveyor General, which said site has been purchased by the said Samuel Davis."

■ The opinion of the Court is that Davis, in his deed of 1834 to Concordia Parish, conveyed the interest which he subsequently acquired in grant from the United States dated March 24, 1841. A full quotation from the deed of Samuel Davis to the Parish of Concordia, Conveyance Book GG, pages 121, 122 (Exhibit G), should be very illuminative and for that reason is quoted in extenso: "Personally came and appeared Samuel Davis * * * who declared that whereas Joseph Vidal, deceased, * * * did in his life time by deed * * * bargain, sell, release and convey unto the Parish of Concordia aforesaid for the uses and purposes and upon the conditions therein mentioned, all his right and title, interest, property, claim and demand of, in and to a certain lot or parcel of land containing one acre and forty three and one-half perches, situated in the Town of Vidalia and having such form and location as is represented in a plat thereof annexed to the said deed—being the same lot of land whereon the Public Buildings of the Parish are now erected—and whereas it has been suggested that the title of the said Joseph Vidal to the said land is defective and that the ownership thereof is legally vested in the said Samuel Davis—Now therefore, in consideration of the good will which he has and bears towards the people of the Parish of Concordia aforesaid, and for the purpose of perfecting and quieting the said title, so that no disputes or controversies may by any possibility hereafter arise in relation thereof he, the said Samuel Davis, declared that he does hereby give, grant, assign, release, convey and assure unto the Police Jury of the Parish aforesaid for the uses and purposes mentioned in the deed of the said Joseph Vidal hereinbefore mentioned. All the right, title, interest, property claim, and demand which he now has or may hereafter in any manner acquire of, in and to the said mentioned and described lot or parcel of land, and every part and parcel thereof with the appurtenances, hereby ratifying and confirming the title heretofore made as aforesaid by the said Joseph Vidal and binding himself and his heirs at any time to acknowledge and sustain the validity thereof. And I the said George S. Guion

—being President of the Police Jury of the said Parish aforesaid—do hereby for them and in the name accept this act with all its clauses."

■ The Court is of the opinion that Item One of the motion for summary judgment is good. There was a complete divestiture of title by Vidal and Davis, jointly or separately, and a full and unconditional investiture of title in the public.

There was weakness of title in Vidal in that his predecessors never showed any actual grant from France or Spain. It is to be safely inferred that there was such grant by the following language, from Vol. III, p. 158, of American State Papers, containing a report from the Register of the Land Office to the House of Representatives, dated April 6, 1816, reading in part: "The evidence of Francois Augustin and Domingo Garcia, taken by commission the 17th December, 1813, states that it was the received opinion that the Spanish Government reserved a piece of ground in the post of Concordia, for a town, which was laid off by John and Peter Walker, Spanish surveyors, into lots, whilst Vidal was commandant; that there were legal and actual occupants for every lot in said reserve, and that they were all improved previous to the 20th December, 1803. The names of the grantees recollected are, Edward McCabe, Mion, or Andre Ramirez, Fs. Brullette, Jn. Vidal, Elizabeth Middleton, John Gomex, and Peter House."

Whatever title Vidal had, he passed to the public, except the reversionary features he retained. Davis then acquired the reversionary features from Vidal; additionally, he subsequently received grant from the United States in himself. Davis then was the holder of title from two sources: (a) The fractional reversionary title left of the supposedly good and full title acquired from Eliza Middleton through Vidal, and (b) the full and complete title in himself by the grant from the United States.

On December 29, 1834, by deed, duly recorded in Conveyance Book GG, pp. 121, 122, Records of Concordia Parish (Exhibit G), he conveyed, fully and unreservedly, as per the quotation already a part of this opinion. He offered himself at that time as an even more generous donor than Jose Vidal, who had qualified his public benefaction. Vidal had passed to him the reversionary interest; Davis conveyed unconditionally. Davis was married to

Vidal's only daughter. In him cumulatively and doubly vested, as it were, whatever conflicting title there might have been to the title he held from Vidal. From the reading of the extensive quotation above, there is nothing left, obviously, in the Vidal heirs, unless it be the law that in a donation for a public purpose, in the absence of the specific mention of a reversion based upon a condition subsequent, or in the absence of the mention of what is to occur in case the resolutory condition arises, there should be implied a sequence, in the way of reversion to donor, to follow if at any time in the future the public use be discontinued.

The Supreme Court of Louisiana has answered the question definitely in the case of Board of Trustees of Ruston Circuit v. Rudy et al., 1939, 192 La. 200, 187 So. 549, 550.

The Court there held that the failure of the grantor or donor to reserve expressly a right of reversion or re-entry constitutes a divestiture or abandonment of any such right, and that in the absence of a reversionary clause the heirs or assigns of the grantor cannot set aside the transfer or repossess the property because of a failure by the grantee to use same for the restrictive purposes for which it was sold. We quote the following directly pertinent language of the Court:

"It will be noted that the donor did not make a reservation that the title to the property was to revert to him or his heirs if it were not always used for the purpose for which it was donated.

"It has been held that where the donor does not place such a reservation in the act of donation, the donee is granted a complete title."

The restrictive uses in the deed or deeds involved in the Rudy case and in similar cases are held by the Court to be "merely indicative of the motive in making the donation."

This is good legal philosophy by the Supreme Court of Louisiana. The hand from the grave is not supposed to control human events too long. The donor never meant to be selfish, unless his selfishness is clearly expressed. Selfishness, on the part of the donor is not to be presumed. He wishes no strings to the donation, either for him or his heirs to grasp later.

The second, third and fourth reasons for the allowance of summary judgment in favor of defendants obviously need not be considered by the Court, for by ruling as it does herein on Item One, the legal principles of Items Two, Three and Four are not to be applied.

Let us now consider the points advanced by plaintiffs in their brief.

They cite with much stress and reliance the case of Queensborough Land Co. v. Cazeaux, 1915, 136 La. 724, 67 So. 641, L.R.A.1916B, 1201, Ann.Cas.1916D, 1248. Cazeaux held title from a predecessor who had stipulated in the sale that for 25 years the land conveyed should not be sold or leased to a negro or negroes. When Cazeaux sold to a negro, or anyone else, within the twenty-five year period, without this stipulation being expressed in the sale, he pretended to sell more than he had; the buyer from Cazeaux was on implied notice of that fact, however, by the mere recordation of anterior deed to Cazeaux. The deed to the negro was held to give birth to the resolutory condition, thereby vitiating Cazeaux's title. In the instant case, Davis did not sell or donate more than he had. The Vidal reversionary interest was in him when he donated unconditionally to the public. The Cazeaux case has nothing to do with this decision, in truth, because of our interpretation of the meaning of the language in the deed from Davis to the public, previously quoted.

The second differentiation to be made between the Cazeaux case and the instant one is that the partial restriction in the Cazeaux case upon disposition was for a limited period of 25 years, and in the instant case, the restriction as to use was perpetual. This differentiation is stressed by the Court in the Cazeaux decision at page 645 of the Southern Reporter, in the following language: "A condition in a sale that the property sold shall be used only in a particular way, or shall not be used in some other particular way, is of everyday occurrence; and no one has ever doubted the validity of such a condition, *if merely temporary.*" (Italics supplied)

Brief of Plaintiffs further cites the case of Voinche v. Town of Marksville, 124 La. 712, 50 So. 662, as being definitive of the issue in their favor. This Court in answer quotes from the recent case of Board of Trustees of Ruston Circuit v. Rudy et al., 192 La. 200, 187 So. 549, 551, as follows: "The case of Voinche v. Marksville, 124 La. 712, 50 So. 662, is not apposite

here, because the donor in that case expressly stipulated that the property was to revert to himself or his heirs when it ceased to be used for the purposes for which it was given."

The same reasoning given by us in holding that the Cazeaux case is inapplicable because of the more recent holding in Board of Trustees of Ruston Circuit v. Rudy, cited above, applies likewise in our now holding that the other two cases relied upon by plaintiffs in their brief, namely, R. E. E. De Montluzin Co. v. N. O. & N. E. R. Co., 166 La. 822, 118 So. 33, and Askew et al. v. Vicksburg & S. P. Railway Co., 171 La. 947, 132 So. 510, also are inapplicable.

After all is said and done, the practical result of the decision as written in this case will be that the town, though totally relocated, will still be named Vidalia in honor of Jose Vidal; the money paid for the original Court House and Jail site to the Police Jury of Concordia Parish by the Board of Commissioners of the Fifth Louisiana Levee District and the United States government will be used in the purchase of a new site for the public use of the people of Concordia Parish as a Court House and Jail location. As is shown by this decision, there is no obligation at law resting on the people of Concordia, yet they are fulfilling in essence and spirit the desires of Jose Vidal which prompted his generosity.

Accordingly, therefore, motion for summary judgment as prayed for is allowed and judgment disposing of case finally for defendants will be signed.