On Rehearing
YARRUT, Judge.
On the joint application of both parties we granted a rehearing to review our dismissal, ex proprio motu, of this suit, on the *87 ground it was not a proper case for a declaratory judgment. No objection to the character of the suit was urged below or here, the court below having decided the case on its merits. Our dismissal ex pro-prio motu was made on the holding in Orleans Parish School Board v. City of New Orleans, 238 La. 748, 116 So.2d 509. The reason for the dismissal was that the action for a declaratory judgment cannot be used when the law has otherwise provided an adequate legal remedy. Orleans Parish School Board v. City of New Orleans, 238 La. 748, 116 So.2d 509; Burton v. Lester, 227 La. 347, 79 So.2d 333; State ex rel. La Nasa v. Hickey, 222 La. 17, 62 So.2d 86, Intrusion into office.
As this suit involves title to an immovable, we held that the School Board could not avail itself of the declaratory judgment statute, but was relegated to one of the real actions for redress.
The Board first recites its acquisition of two lots of ground from the City of New Orleans, which in turn had acquired them from one Manson, in 1912, in a notarial act of donation requiring that the lots “be used for public school purposes;” then charges that the widow and heirs of its deceased donor openly claim it has forfeited title by offering them for sale to the public generally. The Board then concludes with a prayer for a declaratory judgment that its title be held not subject to divestiture by defendants, and that it is good and merchantable. Defendants do not question plaintiff’s title or possession, but reconvene for revocation of the donation and revendication of the lots to them.
 In connection with the use of the Uniform Declaratory Judgments Act in this proceeding, LSA-R.S. 13:4231 through LSA-R.S. 13:4236, a brief recital of the pertinent provisions should make it clear that this is a proper case for its use:
“R.S. 13:4231. Courts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree. * * *
“R.S. 13:4233. A contract may be construed either before or after there has been a breach thereof. * * *
“R.S. 13:4235. The enumeration in R.S. 13:4232 through R.S. 13:4234 does not limit or restrict the exercise of the general powers conferred in R.S. 13:4231, in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty.
“R.S. 13:4236. The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding.”
From a casual reading of the provisions of the Declaratory Judgment Statute, quoted supra, it seems clear that this is a case squarely within its contemplation. There is no contest here about title or possession usually involved in a petitory, pos-sessory, jactitation action, or the action to establish title to real estate. The pleadings as a whole, and the factual admissions by stipulation, show that the donor’s heirs and the donee of an immovable disagree whether or not the donee has or will forfeit the donation by committing a certain act or failing to perform a certain condition or obligation imposed by the act of donation. In order not to lose the donation the donee seeks a declaratory judgment. Any obligor, whether lessee or donee, burdened with forfeiture in the event of his negative or affirmative act, violative of his literal obligation, has a right to declaratory relief to *88 guide him in the avoidance of such forfeiture.
However, assuming there were no declaratory judgment statute, the pleadings must certainly be construed as an action in jactitation by the plaintiff, converted by the defendant into a petitory action. Arent v. Hunter, 171 La. 1059, 133 So. 157; Hunt Trust v. Crowell Land & Mineral Corp., 210 La. 945, 28 So.2d 669; Miami Corp. v. State Mineral Board, 218 La. 163, 48 So.2d 643; Sims v. State Mineral Board, 219 La. 342, 53 So.2d 124; Bates v. Monzingo, 221 La. 479, 59 So.2d 693.
Since the Board is seeking to judicially determine its right to sell the property and use the proceeds, it has a right to declaratory relief in order to avoid losing the donation.
Accordingly, we must confess our error in dismissing the suit as an improper case for a declaratory judgment, and proceed with the case on its merits.
On the merits, the pertinent facts stipulated by the parties are:
By notarial act in January, 1912, the City of New Orleans acquired from James J. Manson six lots of ground, four for a recited consideration of $1,550 cash, and the other two (involved here) under the following recital:
“And the said James J. Manson did further declare that, in consideration of the purchase by the City of New Orleans of the above described property for the price and sum mentioned therein, he does, by these presents cede, donate, abandon, set over and deliver, without any cost whatsoever to the City of New Orleans, to be used for public school purposes, the following described property, to-wit:”
From 1912 to 1926 the city used the property for a public school. From 1926 to 1939 the school was abandoned, and the property rented for $10 per month, the rental used for support of the public school system, all during the life of the donor, who died in 1952, without any objection or protest from the donor. In 1953 the school building was demolished, having been condemned as unsafe. The School Board then offered the property for sale, provoking the extrajudicial claim of defendants, and the institution of this action by the Board for a declaratory judgment.-
The School Board contends the transfer by Manson in 1912 was a remunerative donation or a dedication for public use without any stipulation that title would revert to the donor in the event it ceased to be used for that purpose. Alternatively, the Board contends that the condition does not require that the property be-used physically as a school site, but it would suffice if the rentals or proceeds from a .sale be used for the support of the public schools.
LSA-Civil Code, Art. 1523 defines three-classes of donations inter vivos: Gratuitous, onerous and remunerative. The gratuitous donation is one which is made without condition and merely from liberality.. The onerous donation is one which is burdened with charges upon the donee; and a remunerative donation is one to compensate for services rendered.
It is clear the donation was not made from liberality, although the donor was influenced to make the donation because the donee had purchased four other lots for a. cash consideration. The lots were transferred solely upon condition that they be used for public school purposes. As the donor was developing a residential subdivision, a school located nearby would' naturally accelerate the development. It is clear, then, that the donation was an/ onerous one, burdened with the charge concerning its use; and was a convenant running with the land.
The School Board also contends-, that the transfer was a dedication to .the public generally for public use. While the Ordinance adopted by the city authorizing; *89 acceptance refers to it as a “dedication,” the notarial act of transfer recites the transfer is a donation to the city for a specific use, to-wit, public school purposes. The unilateral declaration in the Ordinance ■could not supersede the bilateral stipulation in the act of donation.
The School Board further contends that, since there is no specific clause that the property would revert to the donor or his heirs, in the event of the violation of the condition, neither the donor nor his heirs can seek revocation and revendication of the property. This contention is contrary to LSA-C.C., art. 1559, which provides that a donation inter vivos can be revoked in case of the nonperformance of the conditions imposed upon the donee. Art. 1566 provides that the donation is not dissolved of right by nonfulfillment of such conditions, but must be sued for and demanded judicially. This defendants have done in their answer to the Board’s petition for a declaratory judgment.
In Voinche v. Town of Marksville, 124 La. 712, 50 So. 662, the Supreme Court recognized the right of the donor to seek return of land donated to the town to be used for the erection and construction of a market house, which the town failed to do. 'The Court recognized the principle of the civil law that the donee is bound to execute the charges or obligations imposed upon him by the act of donation, in the same manner and to the same extent as a debtor in any ordinary contract. It necessarily follows that the right of revocation exists •as a matter of law, with respect to an •onerous donation, as it does in any ordinary commutative contract, without such right being expressly reserved.
The case of Board of Trustees, etc. v. Richardson, 216 La. 633, 44 So.2d 321, holds squarely that a church, to which land had been donated on condition it be used for religious purposes, took the land subject to such condition and could not sell the property for use as a business site. This case expressly overrules 'the holding in the case of Board of Trustees, etc. v. Rudy, 192 La. 200, 187 So. 549, strongly relied upon by the School Board.
The conclusion here must be that the donation was an onerous donation conditioned that the property be used for public school "purposes. This can mean nothing less than the physical use for that purpose, and not the use of rentals or cash proceeds from its sale.
Accordingly, once the School Board parts with title it will have placed the property beyond its control to use it for public school purposes, and will have forfeited the donation.
Whether it must actually conduct classes, or may use it as a school playground, athletic field, library or school warehouse, is not before us in this proceeding. All we are called upon to decide here is whether the School Board can part with title and use the proceeds generally for the public schools.
The fact that the donor was alive and did not object to the rental of the school buildings cannot be construed as an estoppel or consent to the sale and divestiture of title by the School Board, as the Board still had it within its power to resume normal school use.
For the reasons assigned, our original decree is set aside, the judgment of the District Court is reversed, and it is now adjudged and declared only, and no further, that the School Board cannot part with title to the lots to third persons for a cash consideration, even though such cash proceeds will be used generally for public school purposes.
Reversed and rendered.