Dear Mr. Laborde:
This responds to your request for an opinion dated October 7, 1993, which we received by fax, pertaining to the Act of Transfer by which the City of Harahan obtained Lots 1, 2 3 Square C, in Harahan, in October, 1979.
You advise that the property was purchased by the state on 9 March, 1978 for $50,000.00 and subsequently transferred to the City of Harahan on 21 October 1979 to be used as a senior citizens home. Further, that the terms of the transfer document contained a reversionary clause which would cause title to revert to the state should the property fail to be used for the contemplated purposes, as a senior citizens home, for a period of five (5) consecutive years or if the buildings on the property were removed.
You advise that the property was not used according to the terms of the reversionary clause and that the buildings were removed during 1986. Further, that in April, 1987, an Act of Correction was filed and recorded which had as its purpose the deletion of the reversionary clause from the original transfer document.
Finally, in 1990, Act No. 555 authorized the Commissioner of Administration to establish a Cooperative Endeavor Agreement to convey, transfer, assign and deliver title to the property to the City of Harahan.
You pose three questions which we will answer in the order presented, to-wit:
(1) Did title to the property revert to the state pursuant to the reversionary clause described above?
The reversionary clause provides as follows:
 It is further understood and agreed that should the property hereinabove described which is the subject of this transfer cease to be used as a Senior Citizens Home for a period of five (5) consecutive years or should the buildings constructed on such property be removed therefrom, this transfer shall be null and void and the property shall revert to the Grantor and the Grantee or his successor in office hereby agrees to assign and execute the necessary instrument to restore title to the Grantor.
As can be seen from this language, it is explicitly stated that should the property subject to the transfer cease to be used as a senior citizens home for a period of five (5) consecutive years or should the buildings constructed on the property be removed, the transfer is null and void. Your inquiry resulted in a finding that use of the buildings terminated in 1985 and they were demolished in February, 1986. The land is currently cleared and has not been used since 1986 for any purpose. Thus, we conclude that the reversionary clause has been violated in these two respects.
The reversionary clause quoted above meets the definition of a resolutory condition as provided by the Civil Code Articles 773
and 1767. The pertinent language of Article 1767 defines a resolutory condition in the following terms:
 If the obligation may be immediately enforced but will come to an end when the uncertain event occurs, the condition is resolutory.
The jurisprudence of Louisiana has long recognized reversionary interests in real property. See, for instance, Heirs of Primeaux v. Erath Sugar Co., Ltd., 484 So.2d 717, citing Reaux v. Iberia Parish Police Jury, 454 So.2d 227 (3rd Cir. 1984), writ denied, 458 So.2d 120 (La. 1984); Sun Oil Co. v. Stout,46 So.2d 151 (2nd Cir. 1950); Board of Trustees of Ruston Circuit, Etc. v. Rudy, 192 La. 200, 187 So. 549 (1939); Segura Realty Co. v. Segura Sugar Co., 145 La. 510, 82 So. 684 (1919); and Voinche v. Town of Marksville, 124 La. 712, 50 So. 662 (1909).
We therefore find that the reversionary clause quoted above constitutes a resolutory condition so that upon violation of its terms, the subject property reverted back to the grantor, the State of Louisiana, in full ownership and free of any encumbrances.
The act of correction which was executed on February 20, 1987 would have no legal effect as to the reversionary clause in the Act of Transfer for the reasons specified above and, further, because the act of correction was itself a nullity and is void. LSA-R.S. 35:2.1 provides that:
 A. A clerical error in a notarial act affecting movable or immovable property or any other rights, corporeal or incorporeal, may be corrected by an act of correction executed by the notary before whom the act was passed. The act of correction shall be executed by the notary before two witnesses and another notary public.
 B. The act of correction executed in compliance with this Section shall be given retroactive effect to the date of recordation of the original act. However, the act of correction shall not prejudice the rights acquired by any third person before the act of correction is recorded where the third person reasonably relied on the original act. The act of correction shall not alter the true agreement and intent of the parties. (Emphasis added)
A comparison of the purported act of correction will show that these statutory provisions were simply not followed in any regard and, as a consequence, it has no legal efficacy and is without effect.
Since the consideration to the state for transfer of the property was the benefit the state would receive from having a senior citizens home built and maintained on the property, the reversionary clause was clearly intended to insure that if the consideration or the reason for the property transfer was not realized then the state would regain full ownership of the property. The act of correction did not correct a clerical error, but instead attempted to "alter the true intent of the parties" by eliminating the penalty or resolutory condition for non-compliance with the act of transfer.
It is therefore the opinion of this office that the reversionary clause was in fact triggered by non-use and by destruction of the buildings contrary to the express terms of the transfer documents, and the purported act of correction has no legal effect whatsoever. Ownership to the property has, upon violation of the terms of the reversionary clause, vested in the state, subject to formalization by a subsequent reconveyance. Thus, the title of the state at this point in time may be said to be inchoate in nature, and the state may invoke the right of reversion.
(2) Is the City of Harahan required to formally transfer the property back to the state?
Under the terms of the reversionary clause in the original transfer document, by agreement of the parties, ownership has already reverted to the state and is vested in the state inchoately, subject only to formalization by a reconveyance document being executed by the parties. It is our opinion that the subsequent act of correction of April, 1987 would not cure violation of the terms of the original document, as discussed above.
In accordance with the agreement of the parties, the City of Harahan is required to execute an act translative of title reconveying same to the state.
(3) Can the state legally dispose or otherwise encumber state property without receiving fair and equitable consideration?
Under the provisions of Article VII, Section 14(A) of the Louisiana Constitution, except as otherwise provided therein, "the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private." Exceptions to this general rule are found in Section 14(B), with respect to the use of public funds for programs of social welfare for the aid and support of the needy; for pension and insurance programs; for public employees; and for the pledge of public funds, credit or property with respect to bonded debt.
However, we are unable to determine what use is intended for the property by the City of Harahan without further information. In the event the proposed purpose is not covered by the exceptions stated above, the courts have passed on the question of the use of public funds, credit or property in recent cases. See, for instance, Town of Brusly v. West Baton Rouge Police Jury,283 So.2d 288 (1st Cir. 1971), writ denied, 284 So.2d 776
(Sup.Ct. 1973) wherein the Police Jury attempted to reallocate monies from its surplus funds to municipalities within the parish, which was held unconstitutional on the basis that the Police Jury had no legal obligation to provide funding to municipalities; Beard-Pouland, Inc. v. Louisiana Department of Highways, 362 F. Supp. 547 (W.D. La. 1973), wherein it was held that the state could not constitutionally pay relocation expenses when the jurisprudence did not permit such and when a constitutional amendment authorizing this action had not gone into effect; and City of Port Allen, Louisiana v. Louisiana Mun. Risk Management Agency, Inc., 439 So.2d 399 (Sup.Ct. 1983), wherein the Supreme Court held as unconstitutional a statute providing that all government subdivisions which are members of an intergovernmental risk management agency are jointly liable for claims not paid by the agency on the basis that one municipality could not constitutionally agree to pay claims of another inasmuch as it would amount to a donation or a gratuity not authorized by law.
It is notable that in the latter case, the legislature had expressly attempted to impose solidary liability on all members of the fund for unpaid claims, and this was just as explicitly held by the Supreme Court to violate the provisions of Article VII, Section 14(A) of the Constitution. The opinions of this office have consistently followed the holdings of these cases, as in Op. Atty. Gen. 78-1260 (October 4, 1978); Op. Atty. Gen. No. 87-587 (September 8, 1987); Op. Atty. Gen. No. 89-180 (April 26, 1989); Op. Atty. Gen. No. 90-392 (January 15, 1991); Op. Atty. Gen. No. 90-73 (April 24, 1990).
Consequently, while Act No. 555 of the 1990 Session may have authorized the Commissioner of Administration to enter into a cooperative agreement to convey, transfer, assign and deliver title to this property, it must be done within the context of constitutional constraints as interpreted by the courts. For this reason, we must answer your question in the negative insofar as the present facts are concerned. That is, the state must receive fair value for any property transferred unless substantial and equivalent public benefits are to be realized. However, it may be possible that the City of Harahan seeks to use this property for one of the purposes specifically provided by Section 14(B) of Article VII of the Louisiana Constitution of 1974, but we have no information on this matter.
I hope this opinion is of value to you and if we may be of further assistance, please let us know.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: GARY L. KEYSER, CHIEF Lands and Natural Resources Section
GLK/scp