(100 South. 692)

No. 23816.

### BUSH v. BOLTON et al.

(March 8, 1924. Rehearing Denied by the Whole Court June 6, 1924.)

*(Syllabus by Editorial Staff.)*

1. Street railroads ☞33—Grant of land held not defeated by railroad's discontinuance of operation.

A deed of land to holder of a street railway franchise, conditioned to be void upon the grantee's failure to construct and operate the line of street railway within 16 months, otherwise to be and remain the property of grantee, *held*, under Rev. Civ. Code, arts. 2045–2047, an absolute grant of land upon the single condition named and not defeated by the railway's discontinuance of operation after a short time.

2. Street railroads ☞33—Damages for failure to operate street railroad held too speculative for recovery.

Damages to owner of nearby land from failure to operate street railroad after a grant of land, conditioned upon the construction of the road within a stated time, *held* too speculative to afford grounds of relief.

Land and Rogers, JJ., dissenting.

Appeal from Thirteenth Judicial District Court, Parish of Rapides; Jas. Andrews, Judge.

Action by Thomas G. Bush against J. W. Bolton and others. Judgment for plaintiff, and defendants appeal. Judgment modified, and as modified affirmed.

Blackman & Overton, of Alexandria, for appellants Vance Heirs.

Thornton, Gist & Richey, of Alexandria, for appellants Bolton and Hayden.

White, Holloman & White, of Alexandria, for appellee.

By the WHOLE COURT.

ST. PAUL, J. Plaintiff agreed to sell, and defendants agreed to buy, 15 acres of land in Rapides parish near the city of Alexandria. Defendants rejected the title on the ground that the heirs of one John C. Vance might have a reversionary interest therein. Plaintiff then brought this suit to compel specific performance, and made the heirs of Vance parties hereto. The latter claimed title to the property, and the controversy is entirely between plaintiff and the heirs of Vance; defendants being willing to comply with their contract, if the title be in plaintiff.

### I.

The facts are not disputed. Plaintiff was about to build a street railway in Alexandria and suburbs, and acquired a franchise therefor, having 25 years to run. Said Vance and one William Hill owned adjoining properties in the suburbs, some 200 acres each. They were anxious to have the line run between their two properties (about half a mile) so as to convert them from rural into urban property.

To that purpose Hill deeded certain property to plaintiff, title to which is not in controversy. And Vance "sold, transferred, conveyed and set over" unto plaintiff the 15 acres out of which this controversy arises. The deed recites:

"This sale is made in view of the fact that the vendor herein owns a large tract of acreage property situated in a southerly direction from the city of Alexandria, Rapides parish, state of Louisiana, distant from said city about one-half mile consisting of about 180 acres; and in consideration of the building and operating by said Bush or his assigns of an electric street railway beginning at some point in the city of Alexandria traversing its streets in accordance with the franchise to be granted by the city of Alexandria to vendor's said property, and running parallel to same along the lane between William Hill and J. C. Vance to Bayou Robert, all as may be specified in franchise to be obtained from the city of Alexandria, and franchise to be obtained from parish of Rapides.

"It is stipulated, agreed and understood that the enhancement of the value of the property owned by vendor hereinbefore mentioned will be a full fair and just consideration for the above described property sold to Thomas G. Bush, his heirs, and assigns.

"It is further stipulated, agreed and understood that if for any reason the said Thomas G. Bush, his heirs and assigns fail to construct and operate the said line of street railway within a period of 16 months from date, that then and in that case this sale is to be null and void, and the property hereinbefore sold is to revert ipso facto to said vendor, otherwise to be and remain the property of Thomas G. Bush, his heirs and assigns in full ownership forever."

The railroad was built by plaintiff within the 16 months; was operated continuously for about 4 years, intermittently for another year; and then discontinued and the rails taken up. Meanwhile plaintiff had sold the railroad itself to a company which now operates it within the city and along a line which runs alongside of but not between the Hill and Vance properties. Since the taking up of the tracks as aforesaid, Hill and Vance have sold off the balance of their holdings at a considerable advance in price over what the property was worth at the time (1905) but probably for less than they might have received had the road continued to run between their two properties.

## II.

It will be observed that the grant herein made to plaintiff was not a grant for some particular use. This at once distinguishes this case from Voinche v. Marksville, 124 La. 712, 50 South. 662; and Segura Realty Co. v. Segura Sugar Co., 145 La. 510, 82 South. 684. In both those cases the land was granted for some particular use with the express stipulation that should the land cease to be used for that purpose it should revert to the grantor.

It is apparent that to call such a grant a grant of the land itself is to miscall it, for it is nothing more than the grant of a perpetual servitude upon the land, just as the grant of a perpetual right of way to a railroad is simply the grant of a servitude. Hence it was correctly decided in those cases that the grant (servitude) was extinguished by the happening of the dissolving condition attached thereto. R. C. C. 783, No. 6.

[1] In this case there was a grant of the land itself without limitation whatsoever upon the use to which it might be put; and hence title vested in plaintiff at once, subject to the right of Vance to dissolve the contract provided matters could be placed in the same condition as if the contract had never been entered into. R. C. C. 2045, 2046, 2047.

But, if the parties have so acted that the restitutio in integrum cannot be had, that is to say, that the parties cannot be restored to their original position, it follows that there cannot be a dissolution of the contract. Miguez v. Delcambre, 125 La. 176, 191, 51 South. 108, and authorities there cited.

It therefore follows, when the situation is such that from the moment when one of the parties begins in good faith a partial performance of his part of the contract he must suffer damage by the dissolution of the contract, that the parties must have contemplated such a contingency and in that case to have waived the resolutory condition, and to have confined the remedies to the claim for damages. R. C. C. 1965. See, also, R. C. C. 1934, No. 5.

In the case at bar it is clear that once plaintiff had, at large expense, built and begun in good faith to operate the road a dissolution of the contract could not but be a source of damage to him. Hence the parties provided that, if plaintiff failed to construct and operate the road within 16 months, the land should revert to Vance. But they did not provide, and it is our conclusion that they did not intend, that plaintiff's title should be in abeyance during the 25 years the franchise had to run. Certainly Vance

was not interested in that, since it was manifestly his purpose to sell as soon as he found it advantageous to do so. And certainly plaintiff did not contemplate that he should hold the property for 25 years, and pay taxes thereon, without being able to improve the same for fear of a forfeiture should the railroad not be a success; no sane man would have done so.

Our conclusion is that the parties contemplated just what they seem to have said, viz. that, if plaintiff constructed and began in good faith to operate the road within 16 months, the property should be vested in him absolutely, and thereafter each was to take the chances of their joint venture proving a success.

[2] At any rate, all that Vance would have been entitled to was the damage he suffered by plaintiff's failure to operate the road, and those damages are too speculative to afford grounds for relief. Eckington v. McDevitt, 191 U. S. 103, 24 Sup. Ct. 36, 48 L. Ed. 112.

In Texas & Pacific R. R. Co. v. City of Marshall, 136 U. S. 393, 10 Sup. Ct. 846, 34 L. Ed. 385, the Supreme Court of the United States seems to have sensed the principle that in such cases a partial compliance in good faith with the obligations of grantee vested the title.

Taylor v. Florida East Coast Ry., 54 Fla. 635, 45 South. 574, 16 L. R. A. (N. S.) 307, 127 Am. St. Rep. 155, 14 Ann. Cas. 472, is in direct conflict with T. & P. Ry. Co. v. Marshall, supra, for it directs specific performance, which in the latter case was shown to be wholly impractical in such cases.

Town of Hinckley v. Kettle River R. R. Co., 70 Minn. 105, 72 N. W. 835, holds that the remedy is damages, just as the United States Supreme Court had held in the Marshall Case that the remedy, if any, is damages.

On the whole, we are of opinion that plaintiff's title is perfect.

### III.

Since this appeal was taken, the plaintiff has departed this life. His executor and his heirs have all been made parties. We think that, since they are all concluded hereby, it will suffice that the deed be executed by the executor.

For convenience we recast the judgment as follows:

### Decree.

It is therefore ordered that the demand of the heirs of John C. Vance be rejected; that the defendants J. W. Bolton and Jesse F. Hayden accept title to the property in controversy and pay the price agreed upon without interest; that the Hibernia Bank & Trust Company, executor of the plaintiff, be authorized and empowered to execute the deed of sale and receive the price for account of the succession of the deceased plaintiff; that the heirs of Vance pay the costs of both courts.

OVERTON, J., recused.

LAND and ROGERS, JJ., dissent.

Rehearing refused by the WHOLE COURT.