46 So.2d 151 (1950)
SUN OIL CO.
v.
STOUT et al.
No. 7491.
Court of Appeal of Louisiana, Second Circuit.
April 28, 1950.
Rehearing Denied May 31, 1950.
Jodie Stout, Rayville, W. M. Phillips, Shreveport, Herold, Cousin & Herold, Shreveport, Hussey & Smith, Shreveport, Cotton & Bolton, Rayville, M. T. Monsour, Shreveport, for appellants.
C. T. Munholland, Monroe, for appellee, Mount Ollie Baptist Church No. 4.
Warren Hunt, Rayville, for Sun Oil Co.
KENNON, Judge.
Alleging that it was purchaser of oil produced under a lease from the owners of a designated forty acre tract of land in Richland Parish, Louisiana, and that it was unable to distribute the proceeds of the sale of royalty oil to the satisfaction of all the claimants thereto, plaintiff, acting under the provisions of Act No. 123 of 1922, deposited the 1/8th landowner-royalty proceeds in Court and impleaded some forty claimants, praying to be relieved of further liability for the payment of the royalty or for costs of court.
Among the defendants was the Mount Ollie Baptist Church No. 4, whose answer set forth that it was the owner of a one acre tract approximately seventy yards square in the southeast corner of the tract, in controversy by virtue of a deed dated October 7, 1925 from one John Davidson, who was then the owner of the forty acre tract.
This church's answer further set forth that it had not executed any oil and gas lease to the plaintiff or to any other parties *152 and was therefore the owner of 1/40th of the entire amount of oil produced from the forty acre tract. The answer concluded with the prayer that the church be recognized as owner of the one acre tract, including full mineral rights, and as such awarded 1/40th of the gross production, or, in the alternative, be awarded 1/8th of 1/40th with reservation of its rights to claim 8/8ths of the production from the church acre.
The answer of the other defendants set forth various claims and interests which are no longer at issue because at the trial of the case all defendants, except the Mount Ollie Baptist Church No. 4, agreed on a proportion of ownership and distribution of proceeds for 39/40ths of the entire tract, and all united in a denial of the one acre interest claimed by the defendant church. When this stipulation was filed, the District Court rendered judgment awarding 39/40ths of the royalties deposited to the defendants other than the Mount Ollie Baptist Church No. 4, and directed the Clerk to disburse same (less a designated reserve for court costs).
Judgment was further rendered recognizing the Mount Ollie Baptist Church No. 4 to be "owner of one acre of ground" in the drilling unit described, and decreeing this defendant to be entitled to 1/40th of all funds deposited in the registry of the Court, or thereafter accruing and deposited. The judgment reserved to the defendant church the right to claim the full 8/8ths of production from its described one acre tract.
From this judgment, all defendants except the Mount Ollie Baptist Church No. 4 have appealed to this Court.
The only testimony in the record is that presented by the defendant, Mount Ollie Baptist Church No. 4, which established the amount of money deposited in the registry of the Court by the purchaser of oil produced from the forty acres in controversy as a drilling unit under the terms and provisions of General Order No. 96 of the Department of Conservation, which was identified and offered in evidence. The record further established that only one well was drilled on this tract and that same was placed in the approximate center.
The defendant church offered in evidence a deed dated October 7, 1925 from one John Davidson to the defendant church, covering the one acre tract claimed by it. This deed was on a regular printed form for a cash deed in which it was stated that the vendor had "sold, conveyed and delivered" the property described. Relative to consideration, the deed contains the following paragraph: "The price for which the above sale and donation is made is that the herein above described property is to be used exclusively for the purpose of erecting a house of worship and for other purposes, with the distinct understanding that when and if the said property should ever be used for any other than Church purpose or if it should ever be discontinued as a church, then and in that event the title thereto is to revert to the owner of the forty of which this one acre is a part and be the property of the then owner of the said forty."
By stipulation of counsel for all parties, it was agreed that a church was built on the one acre tract soon after its acquisition in 1925, and that the vendee had used the tract and the church building thereon continuously since that date and was so using the premises at the date of the trial. No evidence was presented as to who is the present owner of the surface title to the forty acre tract.
Appellants' contention is that the intent of the parties to the above instrument was to convey only a servitude and that the defendant church acquired thereby no right beyond that of using the surface for religious purposes. Appellee contends that the instrument conveyed a fee title with a resolutory condition enforceable only in a direct action brought by the owner of the forty acre tract of which the one acre is a part.
The question presented, while a difficult one, is not new to the Louisiana jurisprudence. We find the applicable rule of law, together with citations of authority, contained in the following quotation in appellants' brief from the fairly recent *153 Louisiana Supreme Court case of Rock Island A. & L. R. Co. v. Gournay, 205 La. 125, 17 So.2d 89: "It is well-settled in this State that in deciding whether a fee simple title to land has been conveyed or a servitude or right-of-way thereupon has been granted by a deed, the intention of the parties thereto must be determined from the stipulations in the entire instrument, with a view of giving effect to all of the provisions therein contained and thereby avoid neutralizing or ignoring any of them or treating any of them as surplusage. Noel Estate v. Kansas City Southern & G. R. Co., 187 La. 717, 175 So. 468; Hunter Co., Inc., v. Ulrich, 200 La. 536, 8 So.2d 531; Parish of Jefferson v. Texas Co., 192 La. 934, 189 So. 580; Glassell v. Richardson Oil Co., 150 La. 999, 91 So. 431."
The Noel case, supra, quoted extensively in appellants' brief, was one in which the plaintiff had conveyed certain lands to the defendant railroad company. The language of the deed relevant to the present issue being as follows: "* * * containing nine & 68/100 (9.68) acres, more or less, said tract of land herein described is sold and conveyed for railroad purposes only and this grant shall be in perpetuity or so long as it is used by said Company, its successors, or assigns, for railroad purposes, but if abandoned by said Company for such use and purpose, then said land shall revert to the grantor herein or his heirs or assigns."
The Court reached the conclusion that the instrument granted a servitude only and "not the title to the land in fee simple with a resolutory condition." The Hunter Company and Parish of Jefferson cases, supra, both involved the conveyance of a right-of-way for canal purposes. In each of these cases, the Court found from an examination of the entire instrument and the surrounding circumstances that it was the intent of the donor to grant a servitude for the purposes expressed and not to convey the fee simple title with a resolutory condition.
The appellee cites cases in which the Courts concluded that various instruments, conveying title for a special purpose with the provision that title should revert to the grantor in the event the property should cease to be used for the purpose stated, were properly to be considered as deeds conveying a fee simple title (with the resolutory condition) rather than granting a surface servitude, as was true in the right-of-way cases. In one of these cases, Voinche v. Town of Marksville, 124 La. 712, 50 So. 662, the Court considered a donation to the town for the purpose of establishing a market with a proviso that "* * * should it happen that said market be not built, the said act of donation will be null, and the said town lot shall, by that fact, belong to the said Voinche."
Plaintiff's petition set forth that although a market had been erected, its use for that purpose had been discontinued, and asked that the donation be revoked on account of the nonperformance of the condition imposed on the donee. The Court upheld this contention.
A second case cited by appellee is that of Segura Realty Co., Inc. v. Segura Sugar Co., Ltd., 145 La. 510, 82 So. 684, 685. In that case, plaintiff's ancestors in title had donated to the defendant company a certain lot of ground. The act of donation contained the following clause: "The purpose for which this donation is made is in order that the donee shall construct thereon a sugar refinery and such buildings, constructions and works as may be necessary, expedient or desirable in and for the accomplishment of said purpose, it being well understood that should the donee herein fail to use the lands herein donated for the purpose herein mentioned, that the said lands revert to the donor."
After the refinery was constructed and operated for some years, it was destroyed in large part by fire. Such parts of the machinery as had not been damaged beyond repair were dismantled and sold. From this act and other circumstances in the record, the Court found that the actions of the donee constituted a failure to use the lands donated for the purposes required in the deed, concluding that "the condition of the donation not being fulfilled, the right to revoke it is clear." Citing the Voinche case, supra.
*154 It is difficult to draw a well defined and clear cut distinction between instruments granting a servitude in the form of a perpetual right-of-way to a railroad or canal company, as was true in the Noel, Jefferson Parish and Hunter Co., cases, supra, and those granting a fee title with a condition that same reverts should the grantee cease to use the land for the declared purpose of town market, sugar refinery, or church, as was true respectively in the Voinche, Segura cases, supra, and in the case now before us. So indistinct is the line at times that the Supreme Court, in declining to consider a conveyance of fifteen acres of land (other than right-of-way), either as the granting of a servitude or as a sale with a resolutory condition, saw fit to place, obiter dicta, the Voinche and Segura "resolutory condition" cases in the same class as those involving railroad rights-of-way. We quote from the Supreme Court opinion in the case of Bush v. Bolton, 156 La. 491, 100 So. 692, 693:
"It will be observed that the grant herein made to plaintiff was not a grant for some particular use. This at once distinguishes this case from Voinche v. Town of Marksville, 124 La. 712, 50 So. 662; and Segura Realty Co. v. Segura Sugar Co., 145 La. 510, 82 So. 684. In both those cases the land was granted for some particular use with the express stipulation that should the land cease to be used for that purpose it should revert to the grantor.
"It is apparent that to call such a grant a grant of the land itself is to miscall it, for it is nothing more than the grant of a perpetual servitude upon the land, just as the grant of a perpetual right of way to a railroad is simply the grant of a servitude. Hence it was correctly decided in those cases that the grant (servitude) was extinguished by the happening of the dissolving condition attached thereto. R.C.C. 783, No. 6."
However, in a later case, Askew v. Vicksburg, S. & P. Ry. Co., 171 La. 947, 132 So. 510, the Supreme Court recognized the difference between the rights of parties in cases where a fee simple title to the land has been conveyed subject to a resolutory condition, and those in which a servitude or right-of-way only has been granted. In this later case, the instrument before the Court was one granting both a railroad right-of-way and a two acre tract adjacent thereto to be used as a depot site. There, as in the case before us, contention was made that the grant of two acres of land constituted only a servitude to use same for a depot site and that, since the grantee did not build a depot, the servitude was lost by the prescription of ten years for non-use. The defendant contended that the grant conveyed the fee title with a resolutory condition and that, since the action was one to enforce a resolutory condition, same was barred by the prescription of ten years. The Court made a distinction between the property granted for a railroad right-of-way and that granted "for purposes of a railroad depot." In this opinion, Chief Justice O'Niell held that, insofar as the stipulation "for purposes of a depot" may have been intended as a resolutory condition, action on same was barred by the prescription of ten years under authorities there cited.
An examination of all of the above cited cases and of other cases involving the point at issue discloses that generally in right-of-way caseswhether the same be for rail or canal purposesthe Courts have construed the intent of the parties to be to grant a servitude only and have held that the fee title remained in the owner of the land over which the right-of-way was granted. This is in line with the modern practice of companies constructing cross-country pipelines, etc. to acquire only right-of-way rights through the lands over which the lines run. In cases in which the instrument granted a parcel of ground for a particular purpose such as a city market, sugar refinery, or house of worship, the Court has usually found that it was the intent of the parties to grant a fee title subject to the resolutory condition. This is consistent with the usual practice of religious and community service organizations to acquire a regular fee title to the land on which its buildings may rest.
An examination of all the stipulations in the deed before us, and of the record, and of the authorities cited in briefs of appellants and appellee, leads us to the conclusion that the deed to the defendant *155 church was such as not to limit the conveyance to that of a mere servitude, as was found to be true generally in the railroad and canal right-of-way cases, but on the contrary, the described acre became the property of the church, subject to a resolutory condition, as was held by the Courts in other cases where the donation was for some special purpose other than right-of-way.
We next consider appellants' contention that the claiming of the royalty money and the reservation of its right to assert its ownership of the full mineral interest under the one acre, constituted a violation by the defendant church of the resolutory condition in the deed, which limited the use of the one acre to the erection of a house of worship and other religious purposes. In general it might be said that where the vendee has acquired a fee simple title, the existence of the condition that title will revert in the event vendee ceases to use the premises for church purposes, does not preclude the vendee from making incidental use for other purposes, particularly if such secondary use does not diminish the effective use of the property and premises for the main purpose. For illustration, in the case of a rural church, it would certainly be permissible to use a portion of the donated property as a burial ground, nor could it be doubted that the owner of such property would be authorized to market and sell such timber as might grow on the portion of the acre upon which no building had been constructed. The record discloses that no oil exploration operations of any sort have been conducted by the defendant church or any one else on the acre in controversy. Under these circumstances, the decision of the Louisiana Supreme Court in the recent case of Board of Trustees of Columbia Road Methodist Episcopal Church of Bogalusa v. Richardson, 216 La. 633, 44 So.2d 321, 323 is applicable, and we find it adverse to appellants' contention. In that case, the Supreme Court found that the church's title to the property in question was subject to the condition that same be used for religious purposes. In spite of this condition, the church board of trustees had actually advertised the property for sale and had set forth in the advertisement that the property was "suitable with slight alterations for practically any business use." Nevertheless, the Supreme Court held that the fact that the church property was still actually in use for church purposes was sufficient to save the church's title from being revoked even though the board of trustees had announced its willingnessand eagernessto terminate such use.
Since no well has been drilled or authorized on the one acre tract, we are not called upon, in this case, to pass upon the question of whether or not the church has the right to drill or authorize the drilling for oil on the acre of land without violating the conditions of its deed of acquisition. Nor do we find it necessary to decide, at this time, whether the defendant church would violate the resolutory condition if the money received from the royalty should be used for purposes other than the erection, rebuilding, repairing or renovating of a house of worship, minister's home, or other church purposes. It is sufficient for the decision in this case that we find that there has been no violationas of the date of trialby the defendant church of the resolutory condition contained in the 1925 deed.
In the case before us, the property is still in use for the religious purposes contemplated in the deed, and the fact that the church takes advantage of the supplemental value of the property, such as demanding and receiving it share of the benefits incidental to the acre being placed in a drilling unit, would not be sufficient grounds for the Court to give effect to the reversionary clause. The fact that the defendant church, at some time in the future, might grant a lease or attempt to drill an oil well on the acre in controversy, is not grounds for a present decree revoking the donation when the record is conclusive that the acre is still being used for religious purposes.
Appellants make the contention that the defendant church is not entitled to a 1/40th share of the royalty deposited in the registry of the Court as coming from the *156 forty acre tract, for the reason that it did not sign the lease or sign any unitization or other participating agreement, asserting that the productive portion of the forty acre tract may not include the one acre owned by appellee. However, the record shows that the oil well from which the royalty is produced, was authorized to be drilled in the center of the forty acre tract, and that, under the general rule for the Delhi Field production is based on forty acre tracts with one well in the center of each such tract. Paragraph III of the petition of the Sun Oil Company stated that the money deposited in Court represented the value of oil that "had been produced from said property" (referring to the full forty acre tract), and that same was due to the royalty owners (of this tract). The answer of the defendant church admitted the production of oil from the entire forty acre tract. The several answers of appellants owning a great majority of the other thirty-nine mineral acres likewise "admitted" Paragraph III of the Sun Oil Company petition. The record establishes the title of the defendant church to the 1/40th portion of the surface, mineral and royalty rights. Under these circumstances, the judgment of the District Court which ordered that the defendant church receive 1/40th of the royalties deposited in the registry of the Court and pay 1/40th of the costs is correct.
The judgment appealed from is affirmed. Costs of appeal to be borne by appellants.