93 So.2d 551

**SUN OIL COMPANY**

v.

**KINDER CANAL COMPANY, Inc.**

No. 42738.

Feb. 25, 1957.

Carmouche & Martin, Lake Charles, for defendant-appellant.

Bernard N. Marcantel, Jennings, for defendants-appellees.

HAMITER, Justice.

In this concursus proceeding, provoked by the Sun Oil Company for the purpose of determining to whom payment is due of oil royalties derived from a well drilled by it, there is at issue the ownership of a strip of land 188 feet in width, being 94 feet on either side of a line commencing 100 feet north of the Northwest corner of the Southeast quarter, Section 25, Township 6 South, Range 5 West, and thence in a direct line to a point 100 feet north of the Northwest corner of the Southeast quarter of the Southeast quarter, Section 25, Township 6 South, Range 5 West. The strip, a part of a 40 acre operating unit established by Sun Oil Company, is located in Allen Parish and contains approximately 7.44 acres.

The ownership dispute is between the Kinder Canal Company (known hereinafter as Kinder Canal), on the one hand, and Adelphine Chachere (along with certain purchasers of royalty interests from her) and the heirs of her deceased husband Nolle Chachere (all of whom are referred to hereinafter as the Chacheres), on the other hand. The district court resolved it in favor of the Chacheres, and Kinder Canal is appealing.

The strip in contest lies wholly within the West Half of the East Half of Section 25 of the mentioned township and range. To this 160 acre tract (more or less, and except seven acres sold and not involved herein) the Chacheres have a chain of title running back through Charles C. Hill to a patent issued by the United States Government.

Kinder Canal's claim to the fee ownership of the strip is based on a warranty deed (in its chain) from the said Charles C. Hill to O. E. Moore which was executed and recorded in 1899, approximately six years prior to the conveyance by Hill to the ancestor in title of the Chacheres. However, the original of such deed was destroyed in 1910 when the Calcasieu Parish Courthouse burned (the land at that time was in Calcasieu Parish, although it is now in Allen Parish), and the only written evidence of it is an abstract "take off" made by an abstracting company. This "take off", relied on by Kinder Canal, states (among other things), that the instrument was a warranty deed executed for a consideration of "$1.00 and Benefits". Further, it sets forth a description of the strip, following which is the notation "Said strip to revert to vendor or his vendors whenever it shall cease to be used for canal purposes."

It is contended by Kinder Canal that such "take off" is of a deed which evidenced a transfer of the fee title to the strip, subject to a resolutory condition. In opposition, the Chacheres maintain that the instrument thus abstracted conveyed only a servitude for the passage of water (for

canal purposes), the present existence of which they recognize.

An almost identical situation was presented in Hunter Company, Inc., v. Ulrich, 200 La. 536, 8 So.2d 531, 535, the decision in which is clearly decisive of this controversy. The deed in question therein, executed in 1900 in favor of the Houston Canal Company, Ltd. and affecting certain strips of land, was destroyed in the same Calcasieu Parish Courthouse fire. The court concluded, as testified to by an abstractor, that: " * * * it was impossible to say with any degree of certainty whether the instrument referred to in the particular excerpt or take off was an instrument conveying a fee or an instrument conveying merely a right of way * * *." Further, " * * * in view of the method used by the Title Company in those years, the instrument itself might have been a warranty deed conveying a right of way, or it might have been a warranty deed conveying a fee title * * *" to the strips of land.

Because of that uncertainty the court took into consideration various circumstances in determining the question of fact presented, which was whether the destroyed instrument conveyed merely a right of way (a servitude) or the fee. Among these were: the amount stated as the consideration—"$10.00 and other valuable considerations"; the fact that a subsequent deed recited that the property was sold subject to "the rights of the Houston River Canal Company, Limited * * * in and to" the various strips in dispute, and it did not except or reserve from the sale the strips of land themselves; the fact that for many years after the execution of the destroyed instrument the canal company was not assessed (and it paid no taxes) respecting any of the sections in which the particular strips were located, whereas the entire property (without excepting those particular strips) continued to be assessed to the vendor; and that "it was not necessary for the Houston River Canal Company to acquire the strips of land in fee, since the acquisition of a right of way thereon was all that was necessary for its purpose." After considering those circumstances the court held that the deed conveyed only a right of way, or the use of the strips of land for canal purposes, not a fee title.

Considering the instant case in the light of the Hunter Company decision it is noticed that the consideration given for the conveyance in 1899 was "$1.00 and Benefits"; that after the sale the same vendor (Charles C. Hill) sold the entire property without any exception or exclusion of the strip; that when O. E. Moore (who had obtained the contested deed from Hill) sold his entire canal system to the Calcasieu River Irrigation Company he referred to and conveyed the strip in question as a "canal right of way", while in the same deed he transferred in fee certain other described properties; and that it was un-

necessary for Kinder Canal to acquire the strip in fee since a right of way or servitude was sufficient for its canal operations.

Kinder Canal urges that the Hunter Company case is distinguishable in that here it was assessed with and it paid taxes on the strip for many years, and it performed numerous other acts indicative of a fee ownership. We do not find from the record that Kinder Canal was assessed with or paid taxes on the strip of land itself. As is correctly pointed out by the trial judge in his detailed and thorough written analysis of the evidence, the tax receipts from 1908 to and including 1946 (excepting 1922) contained nothing "to indicate that Kinder Canal paid taxes on property located in Section 25–6–5, for that section is not listed in any of those receipts. The majority of those tax receipts describe certain specific quarter sections in other sections and conclude with language generally to this effect—'canals, right of ways, pumping plant complete'". It was not until 1947 that the canal company was assessed with anything in Section 25, the assessment then describing "a R/W 188 ft wide through * * * 25–6–5". On the other hand, the assessment sheets picked at random show that the Chacheres and their ancestors in title have all the while been assessed with (and they have paid taxes on) the entire West Half of East Half of Section 25 (except the seven acres sold in later years and which is not involved in this litigation) in which the strip wholly lies.

Kinder Canal's other acts allegedly performed and indicative of fee ownership of the canal strip were mortgaging it (along with the entire canal and pumping systems), granting a right of passage to a company for operating a dredge boat, permitting Gulf States Utilities Company to erect and maintain high lines and poles, building and maintaining a bridge and a drainage pipe, cutting trees and brush and performing patrolling operations, allowing fishing but prohibiting seining, using the water for irrigation of rice, executing a lease to Sun Oil Company to explore for minerals, planting trees, and always possessing as fee owners.

Conceding that all of the mentioned acts were performed as alleged, it appears that they, except for the last three, were not inconsistent with the exercise of an existing servitude which the Chacheres have recognized. Furthermore, those acts were not necessarily prejudicial to the fee ownership claim urged by the Chacheres and others.

Of course, the execution of the mineral lease did indicate that Kinder Canal was asserting a fee title. But that did not occur until April, 1952, and then at the request of the Sun Oil Company and over the protests of the Chacheres. On the other hand in 1926, 1935 and 1951 W. J. Unkel, president and general manager of Kinder Canal, negotiated and obtained mineral leases executed by the Chacheres on the entire 160

acre tract (none excepted or excluded the strip in question), on each occasion he serving as a subscribing witness and making no claim on behalf of his company to fee ownership of the canal strip.

The planting of trees in the canal likewise belatedly occurred in 1952. Moreover, Kinder Canal did not always hold possession as fee owner. Rather, as the trial judge points out, " * * * the Chacheres bought, mortgaged, fenced, paid taxes, leased, grazed cattle, and generally did every act of possession they could do on the disputed tract without interfering with Kinder Canal's servitude."

We agree, therefore, with the district judge that the fee ownership of the strip in question is in the Chacheres, subject to the servitude in favor of Kinder Canal. Incidentally, pending this appeal Adelphine Chachere died, and her heirs have been made parties to the suit.

Counsel for Kinder Canal have cited, and they rely on, Askew v. Vicksburg, S. & P. Railway Company, 171 La. 947, 132 So. 510, Arkansas Improvement Company v. Kansas City Southern Railway Company, 189 La. 921, 181 So. 445, and Sun Oil Company v. Stout, La.App., 46 So.2d 151. But these decisions are not controlling here, for none involves an abstractor's deed "take off" such as that presently under consideration.

Pleas of acquisitive prescription of ten and thirty years were filed in the district court on behalf of Kinder Canal. However, in oral argument here its counsel conceded that such pleas are without merit if we conclude (as we have concluded) that the contested deed conveyed merely a servitude.

For the reasons assigned the judgment appealed from is affirmed.